EXHIBIT# 18

U.S Department of Justice

# Certification of Identity

FORM APPROVED OMB NO. 1103-0016
EXPIRES 05/31/2023

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1] CHRISTOPHER JOHN ANDRESKI

Citizenship Status [2] US Social Security Number [3] 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

Current Address 5333 EGYPT VALLEY AVE NE BELMONT, MI 49306

Date of Birth 04-23-1984 Place of Birth HOUSTON, TX

## OPTIONAL: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

ATTORNEY SCOTT GRAHAM

**Print or Type Name**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature** [4] ____________ **Date** 10-03-2022

FOIA# 2022-USMS-FOIA/PA-000226

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

Christopher Andreski
5333 Egypt Valley
Belmont, MI 49306
Email: Andreskichris@outlook.com
Phone: (586) 321-4113

September 09, 2022

USMS FOIA
Office of General Counsel
CG-3 15 Floor
Washington, DC 20530-001
USMS.FOIA@usdoj.gov
Elaine.Rivera@usdoj.gov

FREEDOM OF INFORMATION ACT (FOIA) Request.

The FOIA request of unredacted material consist of the following request below:

> I am requesting all Material, Emails, Memos, Letters and Text Messages to be unredacted from any/all USMS employees who sent, received and/or corresponded to any/all Ottawa County employee which is located in Ottawa County, MI. The employees of Ottawa County, MI divisions consist of the following: Ottawa County Sheriff's Department, Ottawa County Judiciary Court, Ottawa County Probation, Ottawa County pretrial services, Ottawa County Probation, and the Ottawa County Prosecution Office. The time-period of this unredacted FOIA request is from 01/01/2020 to present.

Thank you.

Respectfully,
Christopher Andreski

[signature]

**U.S. Department of Justice**

United States Marshals Service

*Office of General Counsel*

*CG-3, 15th Floor*
*Washington, DC 20530-0001*

September 15, 2022

Christopher Andreski
5333 Egypt Valley NE
Belmont, MI 49306
andreskichris@outlook.com

**Re: Freedom of Information Act Request Number 2022-USMS-FOIA/PA-000226**
**Subject: FOIA Request regarding requester.**

Dear Christopher Andreski,

Reference is made to your above-captioned Freedom of Information Act (FOIA) / Privacy Act (PA) request for any and all unredacted material, emails, memos, letters from any/all USMS employees who may have sent, received and/or corresponded with any/all Department of Labor (DOL) employee, Office of Workman Compensation Program (OWCP) employee, regarding DOL/OWCP past, present, current, open and closed DOL/OWCP cases that pertain to yourself. The time period of this request is from 01/01/2016 to present. Received by the United States Marshals Service (USMS) on September 15, 2022.

As an initial matter, the USMS can neither confirm nor deny the Agency possesses records on the above-named individuals. If the agency possesses responsive records on these individuals, the USMS cannot release any documentation without a properly executed privacy waiver, Form DOJ-361. In order for the USMS to address your request, it is necessary for you to provide the following prerequisite element(s):

**Authorization to disclose records to you.** You must provide a written release, which includes your identifying data, authorizing the USMS to disclose information pertaining to a third-party individual, to you. A Certification of Identity Form, DOJ-361, may be used for this purpose or (if the request is submitted from an attorney's office) a declaration by your client signed under penalty of perjury. See 28 C.F.R §16.41. A Certification of Identity form is available online at http://www.justice.gov/oip/doj-reference-guide-attachment-d-copies-forms.

**Please return the required information to Attn: FOIA/PA, Office of General Counsel, CG-3, 15th Floor, U.S. Marshals Service, Washington, DC 20530-0001 or via email to USMS.FOIA@usdoj.gov.**

**When providing your Certification of Identity, please input in the subject line "Certification of Identity" with the corresponding FOIA Request Number. The FOIA inbox (USMS.FOIA@usdoj.gov) is ONLY for Certificates of Identity (DOJ 361 forms). The USMS FOIA Team will not respond to questions or comments via this inbox.**

**Please submit all questions or comments via your PAL account.** We will acknowledge your request upon receipt of this information and correspond with you again accordingly. If the USMS FOIA Team does not receive a response within thirty (30) days from the date on this letter, your request will be administratively closed.

Please be advised that due to necessary operational changes as a result of the national emergency concerning the novel corona virus disease (COVID-19) outbreak, there may be some delay in the processing of your request.

Sincerely,

Elaine Rivera for

Charlotte Luckstone
Senior Associate General Counsel
FOIA/PA Officer
Office of General Counsel

Enclosure

EXHIBIT# 19

UNITED STATES POSTAL SERVICE
CANNONSBURG
7825 CANNONSBURG RD NE
CANNONSBURG, MI 49317-9800
(800)275-8777

09/12/2022 01:26 PM

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| Envelope 6X9 | 1 | $0.49 | $0.49 |
| First-Class Mail® Letter | 1 | | $0.60 |

Washington, DC 20530
Weight: 0 lb 0.80 oz
Estimated Delivery Date
Fri 09/16/2022
Certified Mail® $4.00
Tracking #:
70220410000108339938
Return Receipt $3.25
Tracking #:
9590 9402 7593 2098 8100 75

Total $7.85

Grand Total: $8.34

Debit Card Remit $8.34
Card Name: VISA
Account #: XXXXXXXXXXXX5727
Approval #: 032600
Transaction #: 214
Receipt #: 011414
Debit Card Purchase: $8.34
AID: A0000000980840 Chip
AL: US DEBIT
PIN: Verified

U.S. Postal Service
CERTIFIED MAIL® RECEIPT
Domestic Mail Only
For delivery information, visit our website at www.usps.com
OFFICIAL USE
Washington DC 20530
Certified Mail Fee $4.00
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $ $3.25
☐ Return Receipt (electronic) $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required $ $0.00
☐ Adult Signature Restricted Delivery $
Postage $0.60
Total Postage and Fees $7.85
Sent To
Street and Apt. No., or PO Box No.
City, State, ZIP+4
PS Form 3800

0317
01
CANNONSBURG MI
Postmark Here
SEP 12 2022
09/12/2022

7022 0410 0001 0833 9938

7022 0410 0001 0833 9945

U.S. Postal Service
CERTIFIED MAIL® RECEIPT
Domestic Mail Only
OFFICIAL USE
Washington DC 20530
Certified Mail Fee $4.00
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $ $3.25
☐ Return Receipt (electronic) $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required $ $0.00
☐ Adult Signature Restricted Delivery $
Postage $0.60
Total Postage and Fees $7.85
Sent To
Street and Apt. No., or PO Box No.
City, State, ZIP+4

0317
01
CANNONSBURG
Postmark Here
SEP 12 2022
09/12/2022

UNITED STATES POSTAL SERVICE
CANNONSBURG
7825 CANNONSBURG RD NE
CANNONSBURG, MI 49317-9800
(800)275-8777

09/12/2022 01:34 PM

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| Envelope 6X9 | 1 | $0.49 | $0.49 |
| First-Class Mail® Letter | 1 | | $0.60 |

Washington, DC 20530
Weight: 0 lb 0.80 oz
Estimated Delivery Date
Fri 09/16/2022
Certified Mail® $4.00
Tracking #:
70220410000108339945
Return Receipt $3.25
Tracking #:
9590 9402 7593 2098 8100 68

Total $7.85

Grand Total: $8.34

Debit Card Remit $8.34
Card Name: VISA
Account #: XXXXXXXXXXXX5727
Approval #: 033350
Transaction #: 215
Receipt #: 011415
Debit Card Purchase: $8.34
AID: A0000000980840 Chip
AL: US DEBIT

U.S Department of Justice

# Certification of Identity

FORM APPROVED OMB NO. 1103-0016
EXPIRES 05/31/2023

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1] CHRISTOPHER JOHN ANDRESKI

Citizenship Status [2] US Social Security Number [3] 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

Current Address 5333 EGYPT VALLEY NE BELMONT, MI 49306

Date of Birth 04-23-1984 Place of Birth HOUSTON, TX

**OPTIONAL: Authorization to Release Information to Another Person**

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

ATTORNEY SCOTT GRAHAM

**Print or Type Name**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature** [4] [signature] **Date** 10-03-2022

FOIA# 2022-USMS-FOIA/PA-000380

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

Christopher Andreski
5333 Egypt Valley
Belmont, MI 49306
Email: Andreskichris@outlook.com
Phone: (586) 321-4113

September 09, 2022

USMS FOIA
Office of General Counsel
CG-3 15 Floor
Washington, DC 20530-001
USMS.FOIA@usdoj.gov
Elaine.Rivera@usdoj.gov

FREEDOM OF INFORMATION ACT (FOIA) Request.

The FOIA request of unredacted material consist of the following request below:

> I am requesting all unredacted Material, Emails, Memos, Letters from any/all USMS employees who sent, received and/or corresponded with any/all Department of Labor (DOL) employee, Office of Workman Compensation Program (OWCP) employee, regarding DOL/OWCP Past, Pending, Current, Open and Closed DOL/OWCP cases that pertain to myself (Christopher J. Andreski) (Christopher John Andreski) (Christopher Andreski). The time-period of this unredacted FOIA request is from 01/01/2016 to present.

Thank you.

Respectfully,
Christopher Andreski

[signature]

**U.S. Department of Justice**

United States Marshals Service

*Office of General Counsel*

*CG-3, 15th Floor*
*Washington, DC 20530-0001*

September 22, 2022

Christopher Andreski
5333 Egypt Valley NE
Belmont, MI 49306
andreskichris@outlook.com

**Re: Freedom of Information Act Request Number 2022-USMS-000380**
**Subject: FOIA Request for USMS documents.**

Dear Christopher Andreski,

Reference is made to your above-captioned Freedom of Information Act (FOIA) / Privacy Act (PA) request for any and all unredacted material, emails, memos, and letters from all former and/or current USMS employees who may have sent, received, and/or corresponded with all of the following that are listed in the attached letter. Received by the United States Marshals Service (USMS) on September 22, 2022.

As an initial matter, the USMS can neither confirm nor deny the Agency possesses records on the above-named individuals. If the agency possesses responsive records on these individuals, the USMS cannot release any documentation without a properly executed privacy waiver, Form DOJ-361. In order for the USMS to address your request, it is necessary for you to provide the following prerequisite element(s):

**Authorization to disclose records to you.** You must provide a written release, which includes your identifying data, authorizing the USMS to disclose information pertaining to a third-party individual, to you. A Certification of Identity Form, DOJ-361, may be used for this purpose or (if the request is submitted from an attorney's office) a declaration by your client signed under penalty of perjury. See 28 C.F.R §16.41. A Certification of Identity form is available online at http://www.justice.gov/oip/doj-reference-guide-attachment-d-copies-forms.

**Please return the required information to Attn: FOIA/PA, Office of General Counsel, CG-3, 15th Floor, U.S. Marshals Service, Washington, DC 20530-0001 or via email to USMS.FOIA@usdoj.gov.**

**When providing your Certification of Identity, please input in the subject line "Certification of Identity" with the corresponding FOIA Request Number. The FOIA inbox (USMS.FOIA@usdoj.gov) is ONLY for Certificates of Identity (DOJ 361 forms). The USMS FOIA Team will not respond to questions or comments via this inbox.**

**Please submit all questions or comments via your PAL account.** We will acknowledge your request upon receipt of this information and correspond with you again accordingly. If the USMS FOIA Team does not receive a response within thirty (30) days from the date on this letter, your request will be administratively closed.

Please be advised that due to necessary operational changes as a result of the national emergency concerning the novel corona virus disease (COVID-19) outbreak, there may be some delay in the processing of your request.

Sincerely,

Elaine Rivera for

Charlotte Luckstone
Senior Associate General Counsel
FOIA/PA Officer
Office of General Counsel

Enclosure

**From:** USMS OGC FOIA
**Sent:** Monday, September 26, 2022 9:21 AM
**To:** andreskichris@outlook.com
**Subject:** DOJ 361 Needed re FOIA Request No. 2022-USMS-000380

Good Morning,

I hope this email finds you safe and in good health.

Attached is a Certificate of Identity (DOJ 361) letter and Certificate of Identity (DOJ 361) form that requires the signature of the individual whose information is being requested in FOIA Request Number 2022-USMS-000380.

Your request will be placed on HOLD until the proper documentation is provided. You have thirty (30) days to provide the requested documentation or your request will be administratively closed.

Should you have any questions, please contact the United States Marshals Service through the Public Access Link (PAL).

Thank you,

USMS FOIA Administrative Team

EXHIBIT# 20

U.S. Postal Service
CERTIFIED MAIL RECEIPT
Domestic Mail Only

7022 0410 0001 0833 9907

Washington DC 20530
OFFICIAL USE

Certified Mail Fee $4.00
Extra Services & Fees (check box, add fee as appropriate)
Return Receipt (hardcopy) $ $3.25
Return Receipt (electronic) $ $0.00
Certified Mail Restricted Delivery $ $0.00
Adult Signature Required $ $0.00
Adult Signature Restricted Delivery $ $0.00
Postage $0.60
Total Postage and Fees $7.85
Sent To
Street and Apt. No., or PO Box No.
City, State, ZIP+4®
PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

0317
01
Postmark Here
CANNONSBURG MI 49317
SEP 16 2022
09/16/2022

UNITED STATES POSTAL SERVICE

CANNONSBURG
7825 CANNONSBURG RD NE
CANNONSBURG, MI 49317-9800
(800)275-8777

09/16/2022 01:53 PM

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| Envelope 6X9 | 1 | $0.49 | $0.49 |
| First-Class Mail® Letter | 1 | | $0.60 |
| Washington, DC 20530 | | | |
| Weight: 0 lb 0.70 oz | | | |
| Estimated Delivery Date Tue 09/20/2022 | | | |
| Certified Mail® Tracking #: 70220410000108339907 | | | $4.00 |
| Return Receipt Tracking #: 9590 9402 7593 2098 8100 51 | | | $3.25 |
| Total | | | $7.85 |

Grand Total: $8.34

Cash $10.35
Change -$2.01

*****************************************
Every household in the U.S. is now eligible to receive a third set of 8 free test kits

U.S Department of Justice

# Certification of Identity

FORM APPROVED OMB NO. 1103-0016
EXPIRES 05/31/2023

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1] CHRISTOPHER JOHN ANDRESKI

Citizenship Status [2] US Social Security Number [3] 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

Current Address 5333 EGYPT VALLEY AVE NE BELMONT, MI 49306

Date of Birth 04-23-1984 Place of Birth HOUSTON, TX

## OPTIONAL: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

ATTORNEY SCOTT GRAHAM

**Print or Type Name**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature** [4] **Date** 10-03-2022

FOIA# 2022-USMS-FOIA/PA-000888

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

Christopher Andreski
5333 Egypt Valley
Belmont, MI 49306
Email: Andreskichris@outlook.com
Phone: (586) 321-4113
September 15, 2022

USMS FOIA
Office of General Counsel
CG-3 15 Floor
Washington, DC 20530-001
USMS.FOIA@usdoj.gov
Elaine.Rivera@usdoj.gov

FREEDOM OF INFORMATION ACT (FOIA) Request.

This FOIA request is for all unredacted material that consist of the following information below:

I am requesting all unredacted telephonic material, text messages and call log records from **Former USMS Employee Bruce Nordin / Bruce A. Nordin** who sent, received and/or corresponded with all the following information that is listed below. The start date is from **01/01/2019** to present.

- Bruce Nordin / Bruce A. Nordin – Government Cell Phone.
- Bruce Nordin / Bruce A. Nordin – Government Office Phone.
- Government Phone Number – (616) 437-1016.
- Government Phone Number – (616) 456-2440
- Government Phone Number – (008) 226-7754

Thank you.

Respectfully,
Christopher Andreski

U.S. Department of Justice

United States Marshals Service

*Office of General Counsel*

*CG-3, 15th Floor*
*Washington, DC 20530-0001*

September 27, 2022

Christopher Andreski
5333 Egypt Valley NE
Belmont, MI 49306
andreskichris@outlook.com

**Re: Freedom of Information Act Request Number 2022-USMS-000888**
**Subject: FOIA Request regarding Bruce A. Nordin.**

Dear Christopher Andreski,

Reference is made to your above-captioned Freedom of Information Act (FOIA) / Privacy Act (PA) request for any and all unredacted telephonic material, text messages and call log records from former USMS employee Bruce Nordin/Bruce A. Nordin who allegedly sent, received and/or corresponded with all the following information that is listed below. The start date is from 01/01/2019 to present.

-Bruce Nordin / Bruce A. Nordin - Government Cell Phone
-Bruce Nordin / Bruce A. Nordin - government Office Phone
-Government Phone Number - (616) 437-1016
-Government Phone Number - (616) 456-2440
-Government Phone Number - (008) 226-7754

Received by the United States Marshals Service (USMS) on September 26, 2022.

As an initial matter, the USMS can neither confirm nor deny the Agency possesses records on the above-named individuals. If the agency possesses responsive records on these individuals, the USMS cannot release any documentation without a properly executed privacy waiver, Form DOJ-361. In order for the USMS to address your request, it is necessary for you to provide the following prerequisite element(s):

**Authorization to disclose records to you.** You must provide a written release, which includes your identifying data, authorizing the USMS to disclose information pertaining to a third-party individual, to you. A Certification of Identity Form, DOJ-361, may be used for this purpose or (if the request is submitted from an attorney's office) a declaration by your client signed under penalty of perjury. See 28 C.F.R §16.41. A Certification of Identity form is available online at http://www.justice.gov/oip/doj-reference-guide-attachment-d-copies-forms.

**Please return the required information to Attn: FOIA/PA, Office of General Counsel, CG-3, 15th Floor, U.S. Marshals Service, Washington, DC 20530-0001 or via email to USMS.FOIA@usdoj.gov.**

**When providing your Certification of Identity, please input in the subject line "Certification of Identity" with the corresponding FOIA Request Number. The FOIA inbox (USMS.FOIA@usdoj.gov) is ONLY for Certificates of Identity (DOJ 361 forms). The USMS FOIA Team will not respond to questions or comments via this inbox.**

**Please submit all questions or comments via your PAL account.** We will acknowledge your request upon receipt of this information and correspond with you again accordingly. If the USMS FOIA Team does not receive a response within thirty (30) days from the date on this letter, your request will be administratively closed.

Please be advised that due to necessary operational changes as a result of the national emergency concerning the novel corona virus disease (COVID-19) outbreak, there may be some delay in the processing of your request.

Sincerely,

Elaine Rivera for

Charlotte Luckstone
Senior Associate General Counsel
FOIA/PA Officer
Office of General Counsel

Enclosure

EXHIBIT# 21

U.S Department of Justice

# Certification of Identity

FORM APPROVED OMB NO. 1103-0016
EXPIRES 05/31/2023

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1] CHRISTOPHER JOHN ANDRESKI

Citizenship Status [2] US Social Security Number [3] 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

Current Address 5333 EGYPT VALLEY AVE NE BELMONT, MI 49306

Date of Birth 04-23-1984 Place of Birth HOUSTON, TX

## OPTIONAL: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

ATTORNEY SCOTT GRAHAM

Print or Type Name

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

Signature [4] Date 10-03-2022

FOIA# 2022-USMS-FOIA/PA-000883

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

**Christopher Andreski**
**5333 Egypt Valley**
**Belmont, MI 49306**
**Email: Andreskichris@outlook.com**
**Phone: (586) 321-4113**
**September 12, 2022**

**USMS FOIA**
**Office of General Counsel**
**CG-3 15 Floor**
**Washington, DC 20530-001**
USMS.FOIA@usdoj.gov
Elaine.Rivera@usdoj.gov

**FREEDOM OF INFORMATION ACT (FOIA) Request.**

This FOIA request is for all unredacted material that consist of the following information below:

> I am requesting all unredacted Material, Emails, Memos, and Letters from former USMS Employee **Bruce Nordin, Bruce A Nordin**, who sent, received and/or corresponded with all the following that is listed below.
>
> All United States Marshal Service (USMS) employee's, Office of General Counsel (OGC) employee, State of Michigan employee, Janet Erlandson, erlandsonj@michigan.gov, Kent County MI employee, Bruce Schutte, Wayne Harrall, kluneke@kentcountyroad.net, Allison Tierney, ATierney@house.mi.gov, Hope MacLaren, HMacLaren@house.mi.gov, Thomas Albert, Tom Albert, Stu Kogge, skogge@geiconsultants.com, Grattan Township MI employee, Ottawa County MI employee, Federal Law Enforcement Association employee (FLEOA), All attorneys along with outside counsel and representatives that are affiliated with FLEOA/FLEOA members, fleoaatty@aol.com, Larry Berger, lberger@lbfedlaw.com, Tom Allen, Thomas Allen, Thomas J. Allen, tom@tjallenlaw.com, Peter Noone, Thomas A. Kuiper, Thomas Kuiper, Scott W. Kraemer, Scott Kraemer, Joshua Kuiper, Joshua J. Kuiper, Josh Kuiper, jkuiperlaw@gmail.com, Lee Fisher, lfisher@miottawa.org, JoEllen Hass, jhaas@miottawa.org, Gregory Babbitt, gbabbitt@miottawa.org, Steve Grimm, Stephen L. Grimm, Steve@slgrimmpc.com, Laureen A. Birdsall, lbirdsall@aol.com, Cliff Bloom, cliff@bloomsluggett.com, Frank Force, supervisor@grattantownship.org, Greg Converse, Gregory Converse, ggconverse@comcast.net, glconverse@gmail.com, all Government Agency and/or Government Agency employee that pertains to my person "**Christopher John Andreski**". (**Andreski, Chris Andreski, Chris J Andreski, Christopher J Andreski, Christopher Jon Andreski, Christopher Andreski, CJA, CA**). The unredacted FOIA request time-period of is from **01/01/2016 to present**.

Thank you.

Respectfully,
Christopher Andreski

UNITED STATES POSTAL SERVICE.

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

6" x 9" Envelope

1PJE2150 • AIC-093
Product Code 93300006
www.usps.com
A product of the United States Postal Service ®
MADE IN THE U.S.A.

00

0 15645 72738 0

49317

-01

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

USMS FOIA
Office of General Counsel
CG-3 15 Floor
Washington, DC 20530-001

9590 9402 7593 2098 8100 75

2. Article Number *(Transfer from service label)*

7022 0410 0001 0833 9938

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
Mail
Mail Restricted Delivery
)0)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 7022 0410 0001 0833 9938 Domestic Return Receipt

CERTIFIED MAIL

From: Christopher Andreski
5333 Egypt Valley N.E.
Belmont, MI 49306

7022 0410 0001 0833 9938

UNITED STATES POSTAL SERVICE
1000

20530

U.S. POSTAGE PAID
FCM LETTER
CANNONSBURG, MI
49317
SEP 12, 22
AMOUNT
$7.85
R2305K135663

To: USMS FOIA
Office of General Counsel
CG-3 15 Floor
Washington, DC 20530-001

ReadyPost®
Document Mailer

**Christopher Andreski**
**5333 Egypt Valley**
**Belmont, MI 49306**
**Email: Andreskichris@outlook.com**
**Phone: (586) 321-4113**
**September 12, 2022**

**USMS FOIA**
**Office of General Counsel**
**CG-3 15 Floor**
**Washington, DC 20530-001**
USMS.FOIA@usdoj.gov
Elaine.Rivera@usdoj.gov

**FREEDOM OF INFORMATION ACT (FOIA) Request.**

This FOIA request is for all unredacted material that consist of the following information below:

> I am requesting all unredacted Material, Emails, Memos, and Letters from all **Former and/or Current USMS Employee** who sent, received and/or corresponded with all the following that is listed below.
>
> All United States Marshal Service (USMS) employee's, Office of General Counsel (OGC) employee, State of Michigan employee, Janet Erlandson, erlandsonj@michigan.gov, Kent County MI employee, Bruce Schutte, Wayne Harrall, kluneke@kentcountyroad.net, Allison Tierney, ATierney@house.mi.gov, Hope MacLaren, HMacLaren@house.mi.gov, Thomas Albert, Tom Albert, Stu Kogge, skogge@geiconsultants.com, Grattan Township MI employee, Ottawa County MI employee, Federal Law Enforcement Association employee (FLEOA), All attorneys along with outside counsel and representatives that are affiliated with FLEOA/FLEOA members, fleoaatty@aol.com, Larry Berger, lberger@lbfedlaw.com, Tom Allen, Thomas Allen, Thomas J. Allen, tom@tjallenlaw.com, Peter Noone, Thomas A. Kuiper, Thomas Kuiper, Scott W. Kraemer, Scott Kraemer, Joshua Kuiper, Joshua J. Kuiper, Josh Kuiper, jkuiperlaw@gmail.com, Lee Fisher, lfisher@miottawa.org, JoEllen Hass, jhaas@miottawa.org, Gregory Babbitt, gbabbitt@miottawa.org, Steve Grimm, Stephen L. Grimm, Steve@slgrimmpc.com, Laureen A. Birdsall, lbirdsall@aol.com, Cliff Bloom, cliff@bloomsluggett.com, Frank Force, supervisor@grattantownship.org, Greg Converse, Gregory Converse, ggconverse@comcast.net, glconverse@gmail.com, all Government Agency and/or Government Agency employee that pertains to my person **"Christopher John Andreski"**. (**Andreski, Chris Andreski, Chris J Andreski, Christopher J Andreski, Christopher Jon Andreski, Christopher Andreski, CJA, CA**). The unredacted FOIA request time-period of is from **01/01/2016 to present.**

Thank you,

Respectfully,
Christopher Andreski

[signature]

POSTAL SERVICE 6" x 9" Envelope

1PJE2150 • AIC-093
Product Code 93300006
www.usps.com
A product of the United States Postal Service ®
MADE IN THE U.S.A.

0 15645 72738 0

-01

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

USMS FOIA
Office of General Counsel
CG-3 15 Floor
Washington, DC 20530-001

9590 9402 7593 2098 8100 68

2. Article Number *(Transfer from service label)*

7022 0410 0001 0833 9945

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type

☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
...all Restricted Delivery
)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 70220410000108339945 Domestic Return Receipt

CERTIFIED MAIL

From:
Christopher Andreski
5333 Egypt Valley N.E.
Belmont, MI 49306

7022 0410 0001 0833 9945

UNITED STATES POSTAL SERVICE

1000

20530

U.S. POSTAGE PAID
FCM LETTER
CANNONSBURG, MI
49317
SEP 12, 22
AMOUNT
$7.85
R2305K135663

To:
USMS FOIA
Office of General Counsel
CG-3 15 Floor
Washington, DC 20530-001

ReadyPost®
Document Mailer

UNITED STATES POSTAL SERVICE

CANNONSBURG
7825 CANNONSBURG RD NE
CANNONSBURG, MI 49317-9800
(800)275-8777

09/12/2022 01:26 PM

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| Envelope 6X9 | 1 | $0.49 | $0.49 |
| First-Class Mail® Letter | 1 | | $0.60 |
| Washington, DC 20530<br>Weight: 0 lb 0.80 oz<br>Estimated Delivery Date<br>Fri 09/16/2022 | | | |
| Certified Mail®<br>Tracking #:<br>70220410000108339938 | | | $4.00 |
| Return Receipt<br>Tracking #:<br>9590 9402 7593 2098 8100 75 | | | $3.25 |
| Total | | | $7.85 |

Grand Total: $8.34

Debit Card Remit $8.34
Card Name: VISA
Account #: XXXXXXXXXXXX5727
Approval #: 032600
Transaction #: 214
Receipt #: 011414
Debit Card Purchase: $8.34
AID: A0000000980840 Chip
AL: US DEBIT
PIN: Verified

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com.

Washington DC 20530

OFFICIAL USE

Certified Mail Fee $4.00

Extra Services & Fees (check box, add fee as appropriate) $3.25
- Return Receipt (hardcopy) $ $0.00
- Return Receipt (electronic) $ $0.00
- Certified Mail Restricted Delivery $ $0.00
- Adult Signature Required $ $0.00
- Adult Signature Restricted Delivery $ $0.00

Postage $0.60

Total Postage and Fees $7.85

Postmark Here: 0317 01 CANNONSBURG MI SEP 12 2022 USPS 09/12/2022

Sent To
Street and Apt. No., or PO Box No.
City, State, ZIP+4®

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

7022 0410 0001 0833 9938

7022 0410 0001 0833 9945

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com.

Washington DC 20530

OFFICIAL USE

Certified Mail Fee $4.00

Extra Services & Fees (check box, add fee as appropriate) $3.25
- Return Receipt (hardcopy) $ $0.00
- Return Receipt (electronic) $ $0.00
- Certified Mail Restricted Delivery $ $0.00
- Adult Signature Required $ $0.00
- Adult Signature Restricted Delivery $ $0.00

Postage $0.60

Total Postage and Fees $7.85

Postmark Here: 0317 CANNONSBURG SEP 12 2022 USPS 09/12/2022

Sent To
Street and Apt. No., or PO Box No.
City, State, ZIP+4®

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

UNITED STATES POSTAL SERVICE

CANNONSBURG
7825 CANNONSBURG RD NE
CANNONSBURG, MI 49317-9800
(800)275-8777

09/12/2022 01:34 PM

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| Envelope 6X9 | 1 | $0.49 | $0.49 |
| First-Class Mail® Letter | 1 | | $0.60 |
| Washington, DC 20530<br>Weight: 0 lb 0.80 oz<br>Estimated Delivery Date<br>Fri 09/16/2022 | | | |
| Certified Mail®<br>Tracking #:<br>70220410000108339945 | | | $4.00 |
| Return Receipt<br>Tracking #:<br>9590 9402 7593 2098 8100 68 | | | $3.25 |
| Total | | | $7.85 |

Grand Total: $8.34

Debit Card Remit $8.34
Card Name: VISA
Account #: XXXXXXXXXXXX5727
Approval #: 033350
Transaction #: 215
Receipt #: 011415
Debit Card Purchase: $8.34
AID: A0000000980840 Chip
AL: US DEBIT

**U.S. Department of Justice**

United States Marshals Service

*Office of General Counsel*

*CG-3, 15th Floor*
*Washington, DC 20530-0001*

September 22, 2022

Christopher Andreski
5333 Egypt Valley NE
Belmont, MI 49306
andreskichris@outlook.com

**Re: Freedom of Information Act Request Number 2022-USMS-000883**
**Subject: FOIA Request regarding Bruce Nordin.**

Dear Christopher Andreski,

Reference is made to your above-captioned Freedom of Information Act (FOIA) / Privacy Act (PA) request for any and all unredacted material, emails, memos, and letters from former USMS employee Bruce Nordin, Bruce A Nordin, who may have sent, received and/or corresponded with all the following that are listed in the attached letter. Time period is from 01/01/2016 to present. Received by the United States Marshals Service (USMS) on September 21, 2022.

As an initial matter, the USMS can neither confirm nor deny the Agency possesses records on the above-named individuals. If the agency possesses responsive records on these individuals, the USMS cannot release any documentation without a properly executed privacy waiver, Form DOJ-361. In order for the USMS to address your request, it is necessary for you to provide the following prerequisite element(s):

**Authorization to disclose records to you.** You must provide a written release, which includes your identifying data, authorizing the USMS to disclose information pertaining to a third-party individual, to you. A Certification of Identity Form, DOJ-361, may be used for this purpose or (if the request is submitted from an attorney's office) a declaration by your client signed under penalty of perjury. See 28 C.F.R §16.41. A Certification of Identity form is available online at http://www.justice.gov/oip/doj-reference-guide-attachment-d-copies-forms.

**Please return the required information to Attn: FOIA/PA, Office of General Counsel, CG-3, 15th Floor, U.S. Marshals Service, Washington, DC 20530-0001 or via email to USMS.FOIA@usdoj.gov.**

**When providing your Certification of Identity, please input in the subject line "Certification of Identity" with the corresponding FOIA Request Number. The FOIA inbox (USMS.FOIA@usdoj.gov) is ONLY for Certificates of Identity (DOJ 361 forms). The USMS FOIA Team will not respond to questions or comments via this inbox.**

**Please submit all questions or comments via your PAL account.** We will acknowledge your request upon receipt of this information and correspond with you again accordingly. If the USMS FOIA Team does not receive a response within thirty (30) days from the date on this letter, your request will be administratively closed.

Please be advised that due to necessary operational changes as a result of the national emergency concerning the novel corona virus disease (COVID-19) outbreak, there may be some delay in the processing of your request.

Sincerely,

Elaine Rivera for

Charlotte Luckstone
Senior Associate General Counsel
FOIA/PA Officer
Office of General Counsel

Enclosure

**From:** USMS OGC FOIA
**Sent:** Monday, September 26, 2022 9:22 AM
**To:** andreskichris@outlook.com
**Subject:** DOJ 361 Needed re FOIA Request No. 2022-USMS-000883

Good Morning,

I hope this email finds you safe and in good health.

Attached is a Certificate of Identity (DOJ 361) letter and Certificate of Identity (DOJ 361) form that requires the signature of the individual whose information is being requested in FOIA Request Number 2022-USMS-000883.

Your request will be placed on HOLD until the proper documentation is provided. You have thirty (30) days to provide the requested documentation or your request will be administratively closed.

Should you have any questions, please contact the United States Marshals Service through the Public Access Link (PAL).

Thank you,

USMS FOIA Administrative Team

EXHIBIT# 22

**Christopher Andreski**
**5333 Egypt Valley**
**Belmont, MI 49306**
**Email:** Andreskichris@outlook.com
**Phone: (586) 321-4113**

**October 21, 2022**

**USMS FOIA**
**Office of General Counsel**
**CG-3 15 Floor**
**Washington, DC 20530-001**
USMS.FOIA@usdoj.gov
Elaine.Rivera@usdoj.gov

**FREEDOM OF INFORMATION ACT (FOIA) Request.**

The FOIA request of unredacted material consist of the following request below:

> I am requesting all unredacted Telephonic Communications, Material, Emails, Memos, and Letters from any/all USMS employees who sent, received and/or corresponded with any/all Department of Labor (DOL) employee, Office of Workman Compensation Program (OWCP) employee, regarding DOL/OWCP Past, Pending, Current, Open and Closed DOL/OWCP cases that pertain to myself (Christopher J. Andreski) (Christopher John Andreski) (Christopher Andreski).
>
> Additionally, I am also requesting all unredacted Telephonic Communications, Material, Emails, Memos, and Letters referencing all 3 USMS pending investigation against Christopher Andreski as described in the attached document to this letter. The USMS disclosed the 3 pending investigations against Christopher Andreski to the U.S. Department of Labor Claims Examiner on 02-17-2022.
>
> The attached document to this letter is the Department of Labor Claims Examiner notes (CA-110 Notes) that were summitted in ECOMP on 02-17-2022.

Thank you.

Respectfully,
Christopher Andreski

**Christopher Andreski**
**5333 Egypt Valley**
**Belmont, MI 49306**
**Email: Andreskichris@outlook.com**
**Phone: (586) 321-4113**

**October 21, 2022**

**USMS FOIA**
**Office of General Counsel**
**CG-3 15 Floor**
**Washington, DC 20530-001**
USMS.FOIA@usdoj.gov
Elaine.Rivera@usdoj.gov

**FREEDOM OF INFORMATION ACT (FOIA) Request.**

The FOIA request of unredacted material consist of the following request below:

> I am requesting all unredacted Telephonic Communications, Material, Emails, Memos, and Letters from any/all USMS employees who sent, received and/or corresponded with any/all Department of Labor (DOL) employee, Office of Workman Compensation Program (OWCP) employee, regarding DOL/OWCP Past, Pending, Current, Open and Closed DOL/OWCP cases that pertain to myself (Christopher J. Andreski) (Christopher John Andreski) (Christopher Andreski).
>
> Additionally, I am also requesting all unredacted Telephonic Communications, Material, Emails, Memos, and Letters referencing all 3 USMS pending investigation against Christopher Andreski as described in the attached document to this letter. The USMS disclosed the 3 pending investigations against Christopher Andreski to the U.S. Department of Labor Claims Examiner on 02-17-2022.
>
> The attached document to this letter is the Department of Labor Claims Examiner notes (CA-110 Notes) that were summitted in ECOMP on 02-17-2022.

Thank you.

Respectfully,
Christopher Andreski

PRINTED FROM ECOMP ... 10/18/2022

**U.S. Department of Labor**

Office of Workers' Compensation Programs
Division of Federal Employees' Compensation

File Number:

| | |
|---|---|
| **Caller Name :** SHERMAN, SARAH | **Phone No :** (703) 740-4203 WORK |
| **Caller Type :** AGCY | |
| **Call Reason :** GEN | |
| **Subject :** | |

| | |
|---|---|
| | **Call Date :** 02/17/2022 |
| **Case No:** | **Office :** Office 5 |
| **Call Status :** CLOSED | **Received By :** Jodi G. |
| **Call Type :** PHONE BANK | **Referred To :** Jodi G. |
| **Response Date :** 02/17/2022 | **Response By :** Jodi G. |
| **Last Updated Date :** 02/17/2022 | **Last Updated By :** Jodi G. |

| | |
|---|---|
| **Case Status :** | **Claimant Name :** |
| **Adjudication Status :** | **Date of Injury :** / / |
| **Form Received :** | **Occupation Code :** |

***CA-110 Notes :***

>>>

Completed by Jodi G. at 2/17/2022 4:32:57 PM

When I spoke to the EA on 02/15/2022, I was told there were no EEO or greivence cases submitted by the IW. However, there are 3 pending investigations against the IW.

?

**Christopher Andreski**
**5333 Egypt Valley**
**Belmont, MI 49306**
**Email: Andreskichris@outlook.com**
**Phone: (586) 321-4113**

**October 21, 2022**

**USMS FOIA**
**Office of General Counsel**
**CG-3 15 Floor**
**Washington, DC 20530-001**
USMS.FOIA@usdoj.gov
Elaine.Rivera@usdoj.gov

**FREEDOM OF INFORMATION ACT (FOIA) Request.**

The FOIA request of unredacted material consist of the following request below:

> I am requesting all unredacted Telephonic Communications, Material, Emails, Memos, and Letters from any/all USMS employees who sent, received and/or corresponded with any/all Department of Labor (DOL) employee, Office of Workman Compensation Program (OWCP) employee, regarding DOL/OWCP Past, Pending, Current, Open and Closed DOL/OWCP cases that pertain to myself (Christopher J. Andreski) (Christopher John Andreski) (Christopher Andreski).
>
> Additionally, I am also requesting all unredacted Telephonic Communications, Material, Emails, Memos, and Letters referencing all 3 USMS pending investigation against Christopher Andreski as described in the attached document to this letter. The USMS disclosed the 3 pending investigations against Christopher Andreski to the U.S. Department of Labor Claims Examiner on 02-17-2022.
>
> The attached document to this letter is the Department of Labor Claims Examiner notes (CA-110 Notes) that were summitted in ECOMP on 02-17-2022.

Thank you.

Respectfully,
Christopher Andreski

EXHIBIT# 23

**Christopher Andreski**
**5333 Egypt Valley**
**Belmont, MI 49306**
**Email: Andreskichris@outlook.com**
**Phone: (586) 321-4113**

**October 21, 2022**

**USMS FOIA**
**Office of General Counsel**
**CG-3 15 Floor**
**Washington, DC 20530-001**
USMS.FOIA@usdoj.gov
Elaine.Rivera@usdoj.gov

**FREEDOM OF INFORMATION ACT (FOIA) Request.**

The FOIA request of unredacted material consist of the following request below:

> I am requesting all unredacted Telephonic Communications, Material, Emails, Memos, and Letters from any/all USMS employees who sent, received and/or corresponded with any/all Department of Labor (DOL) employee, Office of Workman Compensation Program (OWCP) employee, regarding DOL/OWCP Past, Pending, Current, Open and Closed DOL/OWCP cases that pertain to myself (Christopher J. Andreski) (Christopher John Andreski) (Christopher Andreski).
>
> Additionally, I am also requesting all unredacted Telephonic Communications, Material, Emails, Memos, and Letters referencing all 3 USMS pending investigation against Christopher Andreski as described in the attached document to this letter. The USMS disclosed the 3 pending investigations against Christopher Andreski to the U.S. Department of Labor Claims Examiner on 02-17-2022.
>
> The attached document to this letter is the Department of Labor Claims Examiner notes (CA-110 Notes) that were summitted in ECOMP on 02-17-2022.

Thank you.

Respectfully,
Christopher Andreski



PRINTED FROM ECOMP ... @yahoo.com 10/13/2022

**U.S. Department of Labor**

Office of Workers' Compensation Programs
Division of Federal Employees' Compensation

File Number:

| | | | |
|---|---|---|---|
| **Caller Name :** | SHERMAN, SARAH | **Phone No :** (703) 740-4203 | WORK |
| **Caller Type :** | AGCY | | |
| **Call Reason :** | GEN | | |
| **Subject :** | | | |

| | | | |
|---|---|---|---|
| | | **Call Date :** | 02/17/2022 |
| **Case No:** | | **Office :** | Office 5 |
| **Call Status :** | CLOSED | **Received By :** | Jodi G. |
| **Call Type :** | PHONE BANK | **Referred To :** | Jodi G. |
| **Response Date :** | 02/17/2022 | **Response By :** | Jodi G. |
| **Last Updated Date :** | 02/17/2022 | **Last Updated By :** | Jodi G. |

| | | | |
|---|---|---|---|
| **Case Status :** | | **Claimant Name :** | |
| **Adjudication Status :** | | **Date of Injury :** | / / |
| **Form Received :** | | **Occupation Code :** | |

***CA-110 Notes :***

>>>

Completed by Jodi G. at 2/17/2022 4:32:57 PM

When I spoke to the EA on 02/15/2022, I was told there were no EEO or greivence cases submitted by the IW. However, there are 3 pending investigations against the IW.

?

U.S Department of Justice

# Certification of Identity

FORM APPROVED OMB NO. 1103-0016
EXPIRES 05/31/2023

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1] CHRISTOPHER JOHN ANDRESKI

Citizenship Status [2] US Social Security Number [3] 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

Current Address 5333 EGYPT VALLEY AVE NE BELMONT, MI 49306

Date of Birth 04-23-1984 Place of Birth HOUSTON, TX

**OPTIONAL: Authorization to Release Information to Another Person**

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

ATTORNEY SCOTT GRAHAM

**Print or Type Name**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature** [4] ______________________ **Date** 10-21-2022

10-21-2022 FOIA REQUEST LETTER (UNREDACTED)

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

FROM ECOMP - 10/18/2022

**U.S. Department of Labor**

Office of Workers' Compensation Programs
Division of Federal Employees' Compensation

File Number:

| | | | |
|---|---|---|---|
| **Caller Name :** SHERMAN, SARAH | **Phone No :** (703) 740-4203 | WORK | |
| **Caller Type :** AGCY | | | |
| **Call Reason :** GEN | | | |
| **Subject :** | | | |

| | |
|---|---|
| | **Call Date :** 02/17/2022 |
| **Case No:** | **Office :** Office 5 |
| **Call Status :** CLOSED | **Received By :** Jodi G. |
| **Call Type :** PHONE BANK | **Referred To :** Jodi G. |
| **Response Date :** 02/17/2022 | **Response By :** Jodi G. |
| **Last Updated Date :** 02/17/2022 | **Last Updated By :** Jodi G. |

| | |
|---|---|
| **Case Status :** | **Claimant Name :** |
| **Adjudication Status :** | **Date of Injury :** / / |
| **Form Received :** | **Occupation Code :** |

***CA-110 Notes :***

\>>>

Completed by Jodi G. at 2/17/2022 4:32:57 PM

When I spoke to the EA on 02/15/2022. I was told there were no EEO or greivence cases submitted by the IW However, there are 3 pending investigations against the IW

?



Received: 02/17/2022 - Case: 550119188 - Page 1 / 1

UNITED STATES POSTAL SERVICE.

BELMONT
6220 BELMONT AVE NE
BELMONT, MI 49306-9910
(800)275-8777

10/21/2022 02:24 PM

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| First-Class Mail® Letter | 1 | | $0.60 |
| Washington, DC 20530<br>Weight: 0 lb 0.90 oz<br>Estimated Delivery Date<br>Mon 10/24/2022 | | | |
| Certified Mail®<br>Tracking #:<br>70211970000071149539 | | | $4.00 |
| Return Receipt<br>Tracking #:<br>9590 9402 7489 2055 4702 89 | | | $3.25 |
| Total | | | $7.85 |
| Envelope 6X9 | 1 | $0.59 | $0.59 |

| | |
|---|---|
| Grand Total: | $8.44 |
| Cash | $10.45 |
| Change | -$2.01 |

Text your tracking number to 28777 (2USPS) to get the latest status. Standard Message and Data rates may apply. You may also visit www.usps.com USPS Tracking or call 1-800-222-1811.

Preview your Mail
Track your Packages
Sign up for FREE @
https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

Tell us about your experience.
Go to: https://postalexperience.com/Pos
or scan this code with your mobile device,

or call 1-800-410-7420.

UFN: 250820-0306
Receipt #: 840-54930410-1-5432548-2
Clerk: 01

UNITED STATES POSTAL SERVICE.

BELMONT
6220 BELMONT AVE NE
BELMONT, MI 49306-9910
(800)275-8777

10/21/2022 02:24 PM

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| First-Class Mail® Letter | 1 | | $0.60 |
| Washington, DC 20530<br>Weight: 0 lb 0.90 oz<br>Estimated Delivery Date<br>Mon 10/24/2022 | | | |
| Certified Mail®<br>Tracking #:<br>70211970000071149539 | | | $4.00 |
| Return Receipt<br>Tracking #:<br>9590 9402 7489 2055 4702 89 | | | $3.25 |
| Total | | | $7.85 |
| Envelope 6X9 | 1 | $0.59 | $0.59 |

Grand Total: $8.44

Cash $10.45
Change -$2.01

Text your tracking number to 28777 (2USPS) to get the latest status. Standard Message and Data rates may apply. You may also visit www.usps.com USPS Tracking or call 1-800-222-1811.

Preview your Mail
Track your Packages
Sign up for FREE @
https://informeddelivery.usps.com

All sales final on stamps and postage. Refunds for guaranteed services only. Thank you for your business.

Tell us about your experience.
Go to: https://postalexperience.com/Pos or scan this code with your mobile device,

or call 1-800-410-7420.

UFN: 250820-0306
Receipt #: 840-54930410-1-5432548-2
Clerk: 01

**U.S Department of Justice**

# Certification of Identity

FORM APPROVED OMB NO. 1103-0016
EXPIRES 05/31/2023

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1] CHRISTOPHER JOHN ANDRESKI

Citizenship Status [2] US Social Security Number [3] 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

Current Address 5333 EGYPT VALLEY AVE NE BELMONT, MI 49306

Date of Birth 04-23-1984 Place of Birth HOUSTON, TX

**OPTIONAL: Authorization to Release Information to Another Person**

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

ATTORNEY SCOTT GRAHAM

**Print or Type Name**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature [4]** ______ **Date** 10-21-2022

10-21-2022 FOIA REQUEST LETTER (UNREDACTED)

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

UNITED STATES POSTAL SERVICE.

BELMONT
6220 BELMONT AVE NE
BELMONT, MI 49306-9910
(800)275-8777

10/21/2022 02:24 PM

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| First-Class Mail® Letter | 1 | | $0.60 |
| Washington, DC 20530<br>Weight: 0 lb 0.90 oz<br>Estimated Delivery Date<br>Mon 10/24/2022 | | | |
| Certified Mail®<br>Tracking #:<br>70211970000071149539 | | | $4.00 |
| Return Receipt<br>Tracking #:<br>9590 9402 7489 2055 4702 89 | | | $3.25 |
| Total | | | $7.85 |
| Envelope 6X9 | 1 | $0.59 | $0.59 |

Grand Total: $8.44

Cash $10.45
Change -$2.01

Text your tracking number to 28777 (2USPS) to get the latest status. Standard Message and Data rates may apply. You may also visit www.usps.com USPS Tracking or call 1-800-222-1811.

Preview your Mail
Track your Packages
Sign up for FREE @
https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

Tell us about your experience.
Go to: https://postalexperience.com/Pos
or scan this code with your mobile device,

or call 1-800-410-7420.

UFN: 250820-0306
Receipt #: 840-54930410-1-5432548-2
Clerk: 01

U.S Department of Justice

# Certification of Identity

FORM APPROVED OMB NO. 1103-0016
EXPIRES 05/31/2023

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1] CHRISTOPHER JOHN ANDRESKI

Citizenship Status [2] US Social Security Number [3] 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

Current Address 5333 EGYPT VALLEY AVE NE BELMONT, MI 49306

Date of Birth 04-23-1984 Place of Birth HOUSTON, TX

**OPTIONAL: Authorization to Release Information to Another Person**

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

ATTORNEY SCOTT GRAHAM

**Print or Type Name**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature** [4] ______ **Date** 10-21-2022

10-21-2022 FOIA REQUEST LETTER (UNREDACTED)

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

**U.S. Department of Labor**

Office of Workers' Compensation Programs
Division of Federal Employees' Compensation

File Number:

| | |
|---|---|
| **Caller Name :** SHERMAN, SARAH | **Phone No :** (703) 740-4203 WORK |
| **Caller Type :** AGCY | |
| **Call Reason :** GEN | |
| **Subject :** | |

| | |
|---|---|
| | **Call Date :** 02/17/2022 |
| **Case No:** | **Office :** Office 5 |
| **Call Status :** CLOSED | **Received By :** Jodi G. |
| **Call Type :** PHONE BANK | **Referred To :** Jodi G. |
| **Response Date :** 02/17/2022 | **Response By :** Jodi G. |
| **Last Updated Date :** 02/17/2022 | **Last Updated By :** Jodi G. |

| | |
|---|---|
| **Case Status :** | **Claimant Name :** |
| **Adjudication Status :** | **Date of Injury :** / / |
| **Form Received :** | **Occupation Code :** |

***CA-110 Notes :***

\>>>

Completed by Jodi G. at 2/17/2022 4:32:57 PM

When I spoke to the EA on 02/15/2022, I was told there were no EEO or greivence cases submitted by the IW. However, there are 3 pending investigations against the IW.

?

**Christopher Andreski**
**5333 Egypt Valley**
**Belmont, MI 49306**
**Email: Andreskichris@outlook.com**
**Phone: (586) 321-4113**

**October 21, 2022**

**USMS FOIA**
**Office of General Counsel**
**CG-3 15 Floor**
**Washington, DC 20530-001**
USMS.FOIA@usdoj.gov
Elaine.Rivera@usdoj.gov

**FREEDOM OF INFORMATION ACT (FOIA) Request.**

The FOIA request of unredacted material consist of the following request below:

> I am requesting all unredacted Telephonic Communications, Material, Emails, Memos, and Letters from any/all USMS employees who sent, received and/or corresponded with any/all Department of Labor (DOL) employee, Office of Workman Compensation Program (OWCP) employee, regarding DOL/OWCP Past, Pending, Current, Open and Closed DOL/OWCP cases that pertain to myself (Christopher J. Andreski) (Christopher John Andreski) (Christopher Andreski).
>
> Additionally, I am also requesting all unredacted Telephonic Communications, Material, Emails, Memos, and Letters referencing all 3 USMS pending investigation against Christopher Andreski as described in the attached document to this letter. The USMS disclosed the 3 pending investigations against Christopher Andreski to the U.S. Department of Labor Claims Examiner on 02-17-2022.
>
> The attached document to this letter is the Department of Labor Claims Examiner notes (CA-110 Notes) that were summitted in ECOMP on 02-17-2022.

Thank you.

Respectfully,
Christopher Andreski

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

**2024 MSPB 10**

Docket No. CH-0752-22-0331-I-1

**Christopher J. Andreski,**

**Appellant,**

**v.**

**Department of Justice,**

**Agency.**

May 30, 2024

Scott Graham, Esquire, Portage, Michigan, for the appellant.

Simon Caine and Cedric D. Bullock, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

## OPINION AND ORDER

¶1 The appellant has filed a petition for review of the initial decision, which dismissed his chapter 75 removal appeal based on his prior election of remedies under 5 U.S.C. § 7121(g). For the reasons discussed below, we DENY the petition for review and AFFIRM the initial decision as MODIFIED by this Opinion and Order to clarify when an election of the remedy under 5 U.S.C. § 7121(g)(3)(C) is binding.

## BACKGROUND

¶2 On April 8, 2022, the appellant filed a complaint with the Office of Special Counsel (OSC) alleging that the agency took several personnel actions against

him in reprisal for his protected whistleblower activity. *Andreski v. Department of Justice*, MSPB Docket No. CH-1221-22-0418-W-1, Initial Appeal File (0418 IAF), Tab 1 at 7, 15. Effective May 7, 2022, the agency removed the appellant from his GS-13 Criminal Investigator, Deputy U.S. Marshal position based on a charge of medical inability to perform. *Andreski v. Department of Justice*, MSPB Docket No. CH-0752-22-0331-I-1, Initial Appeal File (0331 IAF), Tab 9 at 11, 13-16. The agency's removal decision notified the appellant of his right to appeal the agency's action with the Board or by filing a complaint with OSC and of the effect that his election would have on his appeal rights before the Board. *Id.* at 14-15. The appellant amended his OSC complaint at some point in May 2022 to include his removal. 0418 IAF, Tab 16 at 21, 24-26. On June 2, 2022, OSC advised the appellant that it was terminating its inquiry and provided him with notice of his right to file an individual right of action (IRA) appeal to seek corrective action from the Board. 0418 IAF, Tab 1 at 15.

¶3 On June 6, 2022, the appellant filed the instant Board appeal challenging his removal under chapter 75 and requested a hearing. 0331 IAF, Tab 1 at 2. He did not indicate that he filed a whistleblower complaint with OSC on his appeal form. *Id.* at 7. Subsequently, on August 12, 2022, he filed an IRA appeal wherein he also challenged his removal and requested a hearing. 0418 IAF, Tab 1 at 2. During the pendency of the instant appeal, the administrative judge became aware that he filed a complaint with OSC challenging his removal before he filed this appeal. 0331 IAF, Tab 17 at 1-2. For this reason, she issued an order notifying the parties of the election of remedies issue. *Id.* She explained that the appellant's direct appeal of his removal under chapter 75 may be precluded by 5 U.S.C. § 7121(g)(2) because he filed his OSC complaint first. *Id.* She also allowed the parties to submit briefs on the issue, but neither party responded. *Id.* On October 27, 2022, the administrative judge held a status conference to discuss the election of remedies issue with the parties. 0331 IAF, Tab 18 at 1. During

this conference, the appellant indicated that he understood the election of remedies issue and elected to proceed with his IRA appeal. *Id.*

¶4 Subsequently, the administrative judge issued an initial decision dismissing the instant appeal. 0331 IAF, Tab 22, Initial Decision (0331 ID) at 2, 7. She concluded that the appellant made a knowing election to challenge his removal through the OSC complaint process, precluding this chapter 75 appeal under 5 U.S.C. § 7121(g)(2). 0331 ID at 6. She also found that the appellant confirmed his election to proceed with his IRA appeal during the October 27, 2022 status conference. *Id.*; 0331 IAF, Tab 18 at 1. Accordingly, the administrative judge dismissed the instant appeal based on the appellant's election of remedies and advised that the challenge to his removal would be adjudicated in the context of his IRA appeal. 0331 ID at 6. The administrative judge then dismissed the appellant's IRA appeal for lack of jurisdiction, and the Board denied the appellant's petition for review of that initial decision. *Andreski v. Department of Justice*, MSPB Docket No. CH-1221-22-0418-W-1, Final Order (May 30, 2024).

¶5 The appellant has filed a petition for review of the initial decision dismissing his removal appeal. *Andreski v. Department of Justice*, MSPB Docket No. CH-0752-22-0331-I-1, Petition for Review (PFR) File, Tab 1 at 3-5. The agency has filed a response addressing the appellant's IRA appeal. PFR File, Tab 3.

## ANALYSIS

We clarify that an election to pursue a remedy with OSC is effective upon making a complaint to OSC and is not contingent on whether the Board has jurisdiction over the appellant's subsequent IRA appeal.

¶6 Under 5 U.S.C. § 7121(g), an appellant who has been subjected to an action appealable to the Board and alleges that he has been affected by a prohibited personnel practice other than a claim of discrimination under 5 U.S.C. § 2302(b)(1) may elect one, and only one, of the following remedies: (1) an appeal to the Board under 5 U.S.C. § 7701; (2) a grievance filed under the

provisions of a negotiated grievance procedure; or (3) a complaint following the procedures for seeking corrective action from OSC under 5 U.S.C. chapter 12, subchapters II and III. *Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶ 14 (2013); *see* 5 C.F.R. § 1209.2(d)(1). Whichever remedy is sought first is deemed an election of that procedure and precludes pursuing the matter in either of the other two forums. *Sherman v. Department of Homeland Security*, 122 M.S.P.R. 644, ¶ 12 (2015). However, for an election of an option to be binding, it must be knowing and informed. *Agoranos*, 119 M.S.P.R. 498, ¶ 16.

¶7 An individual who first requests corrective action from OSC will be deemed to have made a binding election to proceed in that forum. *Agoranos*, 119 M.S.P.R. 498, ¶ 14; 5 C.F.R. § 1209.2(d). In such a case, the procedures for an IRA appeal apply, even if the contested personnel action would have been directly appealable to the Board. 5 C.F.R. § 1209.2(d)(2). In adjudicating the merits of such an IRA appeal, the Board will limit its inquiry to issues listed at 5 U.S.C. § 1221(e) and will not consider affirmative defenses. 5 C.F.R. § 1209.2(c). On review, the appellant challenges the administrative judge's finding that his chapter 75 appeal was precluded by 5 U.S.C. § 7121(g)(2) because he made a knowing election to seek corrective action with OSC by asserting that "the [administrative judge] did not correctly apply the law to the facts." PFR File, Tab 1 at 4. The appellant's argument is without merit.

¶8 The undisputed record evidence shows that before filing his direct appeal with the Board under chapter 75, the appellant amended his existing OSC complaint to allege that the agency removed him in reprisal for his protected whistleblowing. 0331 ID at 5-6; 0418 IAF, Tab 1 at 7-8, 15, Tab 6 at 4-5, Tab 16 at 21. Further, the appellant decided to proceed with his IRA appeal during the October 27, 2022 status conference. 0331 ID at 6; 0331 IAF, Tab 18 at 1. Therefore, we find no error in the administrative judge's finding that the appellant made a knowing election to pursue corrective action with OSC. 0331 ID at 6. However, it does not appear that the Board has made a

pronouncement in a precedential decision as to whether an appellant's election of remedy to proceed with OSC is binding when, as here, his subsequent IRA appeal is dismissed for lack of jurisdiction. Accordingly, although neither party specifically disputes this election of remedies issue, we take the opportunity to address the issue here.

¶9 There is case law stating that a forum that lacks jurisdiction is not a true election and, thus, is not binding. *E.g.*, *Kerr v. Merit Systems Protection Board*, 908 F.3d 1307, 1315 (Fed. Cir. 2018) (stating that, "[u]nder our precedent, election of a review route that cannot afford a remedy (e.g., no jurisdiction over the claim) will generally not foreclose access to a route that can provide a remedy"); *Shannon v. Department of Homeland Security*, 100 M.S.P.R. 629, ¶ 17 (2005) (analyzing 5 U.S.C. § 7121(g)(4)(A) to find that, if jurisdiction never attached, the original appeal was not a true choice among viable alternatives and, thus, cannot serve as an election of remedies under section 7121(g)). In such cases, however, the employees' election of remedies was not binding because the elected forum did not have and could not assert jurisdiction over the employees' claims. We find that this is inapplicable here because the Board has jurisdiction over an IRA appeal if the appellant establishes the jurisdictional requirements. *See McCray v. Department of the Army*, 2023 MSPB 10, ¶ 11; *see also* 5 U.S.C. §§ 1214(a)(3), 1221(a), (e)(1); 5 C.F.R. § 1209.2.

¶10 Therefore, we take this opportunity to clarify that the clear language of 5 U.S.C. § 7121(g)(4)(C) provides that an election of the remedy to seek corrective action with OSC is effective upon making a complaint to OSC. The election is not contingent on whether the Board has jurisdiction over an appellant's subsequent IRA appeal. Thus, under the statute, the appellant's election is binding upon making a complaint to OSC even when, as here, the Board finds that it lacks jurisdiction over the appellant's subsequently filed IRA appeal. Based on the above analysis, we deny the appellant's petition for review

and find that his binding election precludes Board jurisdiction over his removal appeal.

ORDER

¶11 This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

**NOTICE OF APPEAL RIGHTS**[1]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the

[1] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2)** **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

(3) **Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[2] The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

[2] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Gina K. Grippando

Gina K. Grippando
Clerk of the Board
Washington, D.C.

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

| | |
|---|---|
| | <u>Appellant</u> |
| Certified Mail | Christopher Andreski<br>5333 Egypt Valley Avenue, NE<br><br>Belmont, Michigan 49306 |
| | <u>Agency Representative</u> |
| Electronic Service | Cedric Bullock<br>Served on email address registered with MSPB |
| | <u>Agency Representative</u> |
| Electronic Service | Simon Caine<br>Served on email address registered with MSPB |
| | <u>Private Attorney</u> |
| U.S. Mail | Scott Graham<br>Scott Graham PLLC<br><br>1911 West Centre Avenue, Suite C<br>Portage, Michigan 49024 |

05/30/2024
(Date)

*John Hayes*
John Hayes

CHRISTOPHER J. ANDRESKI v. DEPARTMENT OF JUSTICE
Docket # CH-0752-22-0331-I-1
Petition for Review
Summary Page

**Case Title :** CHRISTOPHER J. ANDRESKI v. DEPARTMENT OF JUSTICE

**Docket Number :** CH-0752-22-0331-I-1

**Pleading Title :** Petition for Review

**Filer's Name :** Scott Graham

**Filer's Pleading Role :** Private Attorney

**Details about the supporting documentation**

N/A

# Table of Contents


Pleading Interview 3
Certificate of Service 6

CHRISTOPHER J. ANDRESKI v. DEPARTMENT OF JUSTICE
Docket # CH-0752-22-0331-I-1
Petition for Review
Online Interview

1. Would you like to enter the text online or upload a file containing the pleading?

Enter Online

---

2. Do you want to enter the text in a free form manner or through a guided interview?

Guided

---

3. Have you been denied any procedures during your appeal to the MSPB to which you believe you were entitled? Examples of procedures include holding a hearing, submitting evidence, and calling witnesses.

Yes

---

4. What procedures were denied and why do you believe you were entitled to them? Did you raise this matter with the judge? Please describe how not having this procedure has harmed you.

Holding a hearing, submitting evidence, and calling witnesses. I was entitled to these procedures because a material issue of fact existed. I did raise this matter with the judge in my papers. I was not able to establish through evidence the factual basis of my claim.

---

5. Do you have any documents or evidence that are important to your appeal that were not filed with the judge before the record closed? If so, you should attach these documents and evidence. (You will be given an opportunity to upload any evidence that you have in electronic form. If you have paper documents you will be given the opportunity to submit them by mail, fax or by personal or commercial delivery)

No

---

6. Did the initial or addendum decision incorrectly decide any important facts or fail to consider any important facts that were presented to the judge?

No

---

7. Did the initial or addendum decision apply the wrong law or apply the law incorrectly?

Yes

---

8. What law should be applied and how? For example, did the decision fail to properly consider a specific law or regulation or another case that has been decided by a court or by the board? Your explanation should refer to a law, regulation or case. Explain how application of the right law should change the result in your case.

The court did not correctly apply the law to the facts.

---

9. Are there other reasons why the initial or addendum decision was wrong?

No

---

10. What action (relief or remedy) do you want the Merit Systems Protection Board to order in this case? Why do you believe that you are entitled to this relief or remedy?

I would like the board to remand this matter with instructions to conduct an evidentiary hearing. I am entitled to this relief because my papers established a basis for such a hearing.

---

11. Does your pleading assert facts that you know from your personal knowledge?

Yes

---

12. Do you declare, under penalty of perjury, that the facts stated in this pleading are true and correct?

# Certificate Of Service

e-Appeal has handled service of the assembled pleading to MSPB and all of the Parties. Following is the list of the Parties in the case:

| Name & Address | Documents | Method of Service |
|---|---|---|
| MSPB: Office of the Clerk of the Board | Petition for Review | e-Appeal / e-Mail |
| Christopher J. Andreski<br>Appellant | Petition for Review | e-Appeal / e-Mail |
| Simon Caine<br>Agency Representative | Petition for Review | e-Appeal / e-Mail |
| Cedric D. Bullock<br>Agency Representative | Petition for Review | e-Appeal / e-Mail |

U.S. MERIT SYSTEMS PROTECTION BOARD

Contact: William Spencer
202-653-7200
TDD/Videophone Users:
Please Call Via Relay

FOR IMMEDIATE RELEASE
June 3, 2024

## MSPB WELCOMES NEW BOARD MEMBER HENRY J. KERNER

The Merit Systems Protection Board (MSPB) welcomes new Board Member Henry J. Kerner, who was sworn in today by Chairman Cathy Harris. Member Kerner was unanimously confirmed by the U.S. Senate on May 14, 2024, after being renominated by President Biden on January 8, 2024. His term expires on March 1, 2030.

Chairman Cathy Harris said, "We are very grateful to once again have a full Board, and particularly excited about Henry joining us. Among other things, he is the first person to have served as Special Counsel and now as a Board member. Henry's previous experience as Special Counsel will be a valuable asset to the Board and will help us in our mission to protect the merit systems."

Vice Chairman Ray Limon added, "I've appreciated getting to know Henry and admired his leadership at OSC. I'm looking forward to collaborating with him now as a colleague, and I welcome him as he joins MSPB's amazing team."

Previously, Member Kerner was the Special Counsel of the Office of Special Counsel (OSC) from October 2017 until October 2023. As Special Counsel, he implemented new processes and procedures aimed at improving OSC response time to whistleblower complaints and streamlining the handling of prohibited personnel practice (PPP) investigations. Under his leadership, OSC set new agency records for the number of favorable actions achieved on behalf of whistleblowers.

Member Kerner graduated from Harvard Law School and spent 18 years working as a career prosecutor, primarily in Compton, California. In 2011, he joined the staff of the U.S. House Committee on Oversight and Government Reform where, under Chairman Darrell Issa and later Chairman Jason Chaffetz, he led investigations of the Federal bureaucracy and advocated on behalf of whistleblowers to protect American taxpayers. Mr. Kerner also served as staff director under Ranking Member Sen. John McCain of the Senate Permanent Subcommittee on Investigations.

MSPB also welcomes Member Kerner's Chief Counsel, Travis Millsaps. He joins MSPB after spending six-and-a-half years at OSC. There, he oversaw the policy and legislative affairs portfolio and reviewed attorney work products related to PPPs, the Hatch Act, and whistleblower disclosures. He also interfaced with the inspector general community and various government agencies, including the Office of Management and Budget, to coordinate OSC's views on whistleblower issues and respond to requests for information. Before his tenure at OSC, Mr. Millsaps worked at the Cause of Action Institute, a nonprofit government watchdog organization. There, he partnered with whistleblowers and stakeholders to conduct strategic oversight of the executive branch through investigations, Freedom of Information Act requests, litigation, and other administrative law accountability measures.

During law school, Mr. Millsaps clerked for the Senate Homeland Security and Governmental Affairs Committee, where he investigated Federal agencies to identify and prevent waste, fraud, and abuse in government. He earned a B.S. in Business Administration from the University of Tennessee and a J.D. from the George Washington University Law School.

The U.S. Merit Systems Protection Board (MSPB) is an independent, quasi-judicial agency whose mission is to protect the Merit System Principles and promote an effective Federal workforce free of Prohibited Personnel Practices.

We have received your submission for Government Employees Pro Bono Application

From: Federal Circuit Bar Association (noreply@formresponse.com)

To: andreskichris@yahoo.com

Date: Friday, June 21, 2024 at 05:38 PM EDT

Federal Circuit Bar Association BENCH & BAR®

**Government Employees Pro Bono Application**

This is in response to your request for pro bono assistance. Among the goals of the organization is encouraging such opportunity for pro bono assistance as the organization's policies and resources may permit. The Federal Circuit Bar Association does not, as an organization, intervene on behalf of or represent pro se individuals.

The Association will forward requests for pro se assistance to volunteer attorneys. **There can be no guarantee that private attorneys will consider or provide representation on any matter forwarded to them**. If circumstances permit volunteer attorneys to consider your dispute, they will contact you directly. Any discussions and decisions related to undertaking an attorney/client relationship will be solely between you and the attorney. Do not forward, fax or email any documents to the Association without being instructed to do so. You will be informed which documents will be required to process your request.

If you have an upcoming deadline, please ensure that you have at least 14 days before the deadline to allow the attorneys to review your case. If your deadline for Petition for Review filing has passed, you will not be eligible for the program unless you have a compelling reason for missing the deadline.

**Please be aware that there can be no guarantees of pro bono representation**. We always encourage those who contact us to reach out to local (e.g., state) bar associations with employment law sections and/or pro bono programs. It is prudent to move ahead in many ways and not rely on any one source. **Submitting this application does not guarantee assistance, and you are responsible for keeping up with any and all deadlines regarding your case.**

We hope this information is helpful. Should you have any questions, please contact probono@fedcirbar.org.

| | |
|---|---|
| First Name | CHRISTOPHER |
| Middle Initial | J. |
| Last Name | ANDRESKI |
| Street Address | 5333 Egypt Valley NE |
| City | Belmont |
| State | Michigan |
| Zip Code | 49306 |
| Email | andreskichris@yahoo.com |
| Phone Number | (586) 321-4113 |
| Agency Name | DEPARTMENT OF JUSTICE USMS |
| Household Income | 0 |
| Number of People in Household | 1 |
| Military Service? | No |
| Do you have now, or have had, the assistance of counsel with respect to this matter? | Yes |
| MSPB Appeal? | Yes |

| | |
|---|---|
| Date of MSPB Appeal | 05-30-2024 |
| Docket number of the MSPB appeal | CH-1221-22-0418-W-1 |
| MSPB Initial Decision? | No |
| Final Order from MSPB? | Yes |
| Date of Final Order | 05-30-2024 |
| Briefly tell us about your case such as what you are appealing and why you are appealing it: | On 06-05-2024, Attorney Counsel Scott Graham received the MSPB Final Order, Docket Number: CH-1221-22-0418-W-1. On 06-21-2024, I Christopher J. Andreski would respectfully request the Federal Circuit Bar Association Bench & Bar grant me Christopher Andreski, Pro Bono Attorney Counsel in Docket Number: CH-1221-22-0418-W-1. On 06-11-2024, Attorney Counsel Scott Graham signed and dated Christopher Andreski hand receipt, regarding to Attorney Scott Graham accepting Christopher Andreski PII Sensitive Information 187-page timeline of attacks that pertain to Docket Number CH-1221-22-0418-W-1. On 06-17-2024, Attorney Counsel Scott Graham sent me an email recommending me request for assistance from the pro-bono panel through the website. While the unjust threats and unjust attacks have taken a toll on my body, mind and life for years. I have exhausted my finances and Federal TSP, from being forced to pay tens of thousands of dollars to a disability dol/owcp attorney that pertained to my USMS work injuries, I also paid for my USMS work injury medical bills which I have been either denied reimbursement or not been reimbursed. The medical travel mileage and other medical travel/vehicle expenses from my USMS work related DOL/OWCP injuries have put me in a financial hardship where I cannot fix my vehicle from all the whistleblowing retaliation attacks and disability discrimination attacks. Thank you for your consideration. Respectfully, Christopher Andreski. |
| Unique ID | 50079 |

FEDERAL LAW ENFORCEMENT OFFICERS ASSOCIATION
General Counsel
70 Glen Street, Suite 280 • Glen Cove, NY 11542
Tel: 516-671-2688 • Fax: 516-671-1148
E-Mail: lberger@lbfedlaw.com

LAWRENCE BERGER
General Cousel
LUCIANO CERASI
Associate General Counsel
JEFF JACOBSON
Associate General Counsel
JAMES OSGOOD
Associate General Counsel
GEORGIA DEPLAS
Associate General Counsel
THOMAS ALLEN
Associate General Counsel

NATHAN CATURA
President
LARRY COSME
Executive Vice President

Attachment #2

April 5, 2017

VIA E-MAIL

Cheryl Jacobs,
Chief Inspector,
USMS Deciding Official
United States Marshals Service
c/o Carmelita White,
Contract Discipline Management Specialist

Re: Deputy United States Marshal Christopher Andreski,
*Western District of Michigan*

Dear Chief inspector Jacobs:

This office has been authorized to assist in responding to the proposal to suspend Deputy United States Marshal Christopher Andreski (DUSM Andreski) for a period of four days, dated March 6, 2017.

It is respectfully suggested that the proposed four day suspension of DUSM Andreski should be rescinded in its entirety, or, at least, mitigated to a much lesser penalty. DUSM Andreski has a lengthy and exemplary record of service with the United States Marshals Service (USMS). In light of this lengthy and exemplary record of service and taking into consideration the full circle of operative circumstances surrounding this matter, a penalty as severe as a suspension is overly harsh and would not enhance the efficiency of the USMS.

In addition the instant matter seems to arise out of an

investigation which, at least partially, finds it genesis in the personal animus which has inexplicably developed on the part of CDUSM Bruce Nordin towards DUSM Andreski. DUSM Andreski has somehow earned the enmity of CDUSM Nordin and has been treated in a highly disparate manner than other deputies in the District.

DUSM Andreski hereby reserves and requests the right to orally reply to the proposal herein. Upon information and belief, an oral reply has previously been scheduled to take place on April 11, 2017.

Initially, DUSM Andreski would have the Deciding Official know that he accepts responsibility for any mistake he has made with regard to either of the Charges levied against him in the proposal.

With regard to Charge 1, "Misuse of Government Travel Card," DUSM Andreski certainly acknowledges that he mistakenly took advances of monies over his limit and for personal reasons as discovered in looking at his purchase records. However, DUSM Andreski would respectfully and vehemently disagree with the conclusion in the proposal that he **intentionally** violated Travel Card policy in taking out these advances. DUSM Andreski was given very little, if any, training in Travel Card policy. Additionally, DUSM Andreski was assigned for a period of years to Superior Court in the District of Columbia. As in many other areas of USMS protocols and policy, things are done differently in Superior Court with regard to Government credit cards and it had been DUSM Andreski's observation/perception that employees had taken advances out of the Travel Card for personal items, without consequence. It is indisputable that, once informed of his mistake, DUSM Andreski ceased such utilization of the Travel Card. Thus, although DUSM Andreski accepts responsibility for mistakenly using the Travel Card in the manner cited in the proposal, he cannot emphasize enough that this misuse was not intentional or willful.

With regard to Charge 2 of the proposal, DUSM Andreski would likewise accept responsibility for any mistake he made with regard to either the creation or distribution of the personally paid for patch at issue herein. However, notwithstanding CDUSM Nordin's recollection of events, DUSM Andreski did not intentionally fail to follow or to ignore CDUSM Nordin's Instructions, or that of the USMS OGC.

The fact is that, when DUSM Andreski approached CDUSM Nordin with the idea of creating and having manufactured a set of patches for District of Western Michigan deputies to hand out to friends and family and other law enforcers, though CDUSM Nordin seems to have forgotten, he originally told DUSM Andreski to contact the OGC and run the idea past that office. [CDUSM Nordin's Email regarding the problems with creating such a patch and the design of the patch was subsequent to the patch's creation and manufacture.]

DUSM Andreski initially called the OGC and had a discussion with an individual at that office over the phone. This individual was rather noncommital to DUSM Andreski's idea for a patch for the deputies of the Western District of Michigan. When Deputy Andreski got off the phone with the OGC, he believed that, since he was utilizing personal funds and since he had not included an image of the official "USMS Star" in his design, that he could go ahead and order the patches.

DUSM Andreski certainly acknowledges that he is not perfect and can admit when he has made a mistake. The main reason he was making the patches was not to insult the Marshal Service, nor to usurp any USMS proprietary symbol or image, nor to disrespect his Chief Deputy. It was simply to hand out to disable children at the YMCA and to friends and family and to colleagues. In addition, DUSM Andreski wanted to raise morale in the Western District of Michigan.

In addition, following his OPR interview, DUSM Andreski did not understand that he should have ceased giving the patches away. He had only a few left out of his original order. He gave several more away to colleagues only to avoid having wasted his money. He was not told in any certain manner to destroy said patches.

DUSM Andreski has several years of experience with the Federal Service. After having served as a Contract Armed Guard for Federal Protective Serves for 4yrs 6 months, DUSM Andreski entered on duty with the USMS on December 10, 2009. After commencing his USMS tenure in Superior Court, D.C., DUSM Andreski has been in the Western District of Michigan for almost 4 years. In the District of Western Michigan, DUSM Andreski has the collateral duties of serving as Recruiting Officer and Backup Motor Vehicle Officer. Throughout the course of his USMS career, DUSM Andreski has always sought to better himself so as to better advance the Service's mission by seeking out and receiving a variety of training courses. See **Exhibit A.**

DUSM Andreski has received commendations for his performance. See **Exhibit B.**

Over the years, DUSM Andreski has conducted his duties in a professional manner; all to the betterment of USMS's reputation. DUSM Andreski's actions and conduct as an 1811 deputy include the following:

- On many occasions, DUSM Andreski was assigned as the DIC of high threat trials & operations while working at DC/SC and W/MI;

-While assigned to DC/SC, DUSM Andreski attended Gang training, Tactical training,

Threat training, Active Shooter training & LINX - LEO Data Base training.

-While assigned to W/MI, DUSM Andreski attended annual Tactical training, Active Shooter training & HRFA training courses.

- DUSM Andreski was assigned to the GRATE (W/MI) & Capitol Area Regional (DC/SC) Fugitive Task Forces.

- DUSM Andreski investigated, testified, obtained arrest/search warrants, and served as the case agent on various cases.

- DUSM Andreski was assigned as the Motor Vehicle Officer at DC/SC and W/MI.

- DUSM Andreski is currently assigned as the W/MI District Recruiting Officer.

- DUSM Andreski received a 24 Hour Award from the High Threat Trial Detail; E/MI.

- DUSM Andreski received an 8 Hour - Group Time-Off Award; DC/SC.

- DUSM Andreski received a 16 Hour - Time-Off Award; W/MI.

- While assigned to DC/SC (June 2013), DUSM Andreski prepared a Search Warrant of a cell phone to locate Fugitive Devonte Jordan (FID# 9036181). DUSM Andreski also prepared and processed payment for a CI who provided information leading to the arrest of JORDAN. During the arrest, DUSm Andreski recovered a hand gun from JORDAN and the perp was charged with a "Felon in Possession of a Firearm" charge.

-In June 2015, DUSM Andreski was assigned to the Grand Rapids Task Force. He prepared a prosecution report on Kasey Lee Riley (FID#9765656), a sex offender out of North Dakota.

- In January 2016, DUSM Andreski was assigned to assist SOIC Joe Guzman with preparing and executing a district wide non- compliance sweep. During that time DUSM Andreski identified all the offenders in W/MI who failed to meet their reporting requirements along with executing several arrests.

- In February 2016, DUSM Andreski tracked a fugitive, Joseph Andersen (FID#1014106), who was wanted out of W/MI and was hiding in Mexico. DUSM Andreski coordinated with the USMS Mexico - International Branch providing them with sensitive information which was critical to the investigation. Once Anderson was apprehended and transferred back to W/MI, DUSM Andreski processed an additional charge of Auto Theft (rental car).

- On several occasions, DUSM Andreski prepared and submitted to HQ all the necessary documentation to pay Confidential Informants for fugitive cases to which he was assigned (DC/SC & W/MI).

- DUSM Andreski has experience collecting and uploading evidence into JDIS, sending

collateral leads through JDIS, writing USM-11s, processing new arrests into JDIS, collecting DNA and using all the search options JDIS has to offer as well as other USMS LEO Data Bases.

- DUSM Andreski was involved in a courtroom incident where he was caused to bring down an individual who ws attacking an AUSA. (See Commendation included in Exhibit B) As a result, DUSM Andreski suffered a knee injury which eventually resulted in his incurring a 15% disabling condition in his left knee.

DUSM Andreski has devoted his adult professional life to the USMS and its mission. Unfortunately, his service to the Agency may have taken a toll beyond what DUSM Andreski ever signed up for. Recently, DUSM Andreski has been exhibiting symptoms which could point toward a serious medical condition. He has been caused to undergo a series of medical examinations and scans to determine whether he is suffering from a particularly grievous form of lung cancer which could have been caused by exposure to asbestos in the cell block of DC Superior Court.

DUSM Andreski joined the Marshal Service to make a difference in the world. When he came to his current District, the Chief Deputy explained to him how the district worked and how the Chief liked things simple. Unfortunately, since his transfer to Western Michigan (W/MI), DUSM Andreski' best efforts on behalf of the District have come to be met by animus and disparate treatment.

DUSM Andreski has been denied or been passed over for 15 collateral duties in W/MI. Management has refused to select DUSM Andreski for the two year Task Force rotation (twice), even though DUSM Andreski has more seniority than the individuals selected for that Task Force.

W/MI has been assigned responsibility for the protection of the Secretary of Education (Betsy DeVos). This detail provides DUSMs with experience and overtime. DUSM Andreski requested, through his supervisor, to be assigned to the detail. DUSM Andreski's supervisor told DUSM Andreski that the Chief only wants certain people working the detail and the Chief wanted to speak to DUSm Andreski. DUSM Andreski then met with the Chief who indicated that, until the IA was cleared, DUSM Andreski would not be working the detail and that he (the Chief) cannot trust DUSM Andreski. DUSM Andreski asked the Chief whether this was "policy" and the Chief responded that it was "my policy." DUSM Andreski also asked the Chief whether, once the IA matter had ben disposed of, could DUSM Andreski be assigned to the detail. The Chief responded, "No; not until I can trust you."

DUSM Andreski recently commenced his three month warrant rotation. For this rotation period, DUSM Andreski was assigned to the Michigan State Police Team which adds two to three hours of commutation to his daily schedule and many additional hours of work per day; this even though during his last warrant rotation he was assigned to the same Michigan State Police Team. DUSM Andreski pointed this out to his management and requested to be assigned to the Grand Rapids Team, especially because DUSM Andreski will be dealing with multiple medical appointments, scans and counseling over the next few months. DUSM Andreski was cavalierly told, "You're a big boy. Handle it."

Further, DUSM Andreski has been faced with threats and hostile work environment when he has attempted to enforce employee rights. On one such occasion, DUSM Andreski spoke to the Chief Deputy regarding possibly filing a EEO complaint. The Chief Deputy started screaming at DUSM Andreski and stated, **"If you think you're going to file, were going to file together."** The CDUSM then proceeded to pick up the phone. After DUSM Andreski backed down and stated he would not file an EEO complaint, the Chief Deputy calmed down and gave DUSM Andreski an extremely aggressive look and said, **"You can't be trusted and you are not reliable and if I have other issues with you, you're going to have to GO."** Needless to say, DUSM Andreski felt both belittled and threatened.

When the Chief Deputy gleefully called DUSM Andreski to his office to hand DUSM Andreski the IA/OPR investigation packet which Ms. Carmelita White had Emailed to the Chief, he omitted most of Exhibit 9, and all of Exhibits 10, 11 and 12.

In light of DUSM Andreski's lengthy, exemplary, loyal and productive record in the Federal Service, we would suggest that the four day suspension proposed in this matter is overly harsh and unjust. Such a suspension would certainly not promote the efficiency of the USMS. It is basic that in order to justify an adverse action such as a suspension the employing agency should be able to show that the disciplinary action will "promote the efficiency of the service". *Young v. Hampton*, 568 F. 2d 1253 (7th Cir. 1977); *Doe v. Hampton*, 566 F. 2d 265 (D.C. Cir. 1977). In *Doe*, this principle was characterized as follows:

> (I)n law as well as logic, there must be a clear and distinct relationship demonstrated.between the articulated grounds for an adverse personnel action and either the employee's ability to accomplish his other duties satisfactorily or some other legitimate government interest promoting the efficiency of the service. **Absent a nexus**, between the "cause" asserted and the "promotion of the efficiency of the service", the adverse action must be condemned as arbitrary and capricious, for want of discernible rational basis. (Citations omitted) [emphasis added].

To reach the ultimate conclusion of whether service efficiency is enhanced as a result of a disciplinary action, the agency must prove by a preponderance of the evidence not only that the employee is at fault for the conduct charged, but also that the conduct impairs the service efficiency ("nexus") and that the penalty is appropriate. 5 USC 7701 and 5 USC 7513. The burden of proof is clearly on the agency, and in the present case, it is respectfully suggested that USMS cannot sustain its evidentiary burden based on the materials relied upon to support the severity of the penalty proposed herein.

Sanctions against federal employees must be reasonable in view of the totality of the circumstances and certain factors must be considered. The pertinent criteria is perhaps best codified in *Douglas v. Veterans Administration*, 5 MSPB 313 (1981). In *Douglas*, the following factors were enumerated and as such, should be considered in the present case in evaluating the reasonableness of the proposed penalty:

1. The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional and technical or inadvertent, or was committed maliciously, or was frequently repeated;

2. The employee's job level and type of employment, including supervisory or fiduciary role, contact with the public, and prominence of the position;

3. The employee's past disciplinary record;

4. The employee's past work record, including length of service, performance on the job, ability to get along with fellow workers; and dependability;

5. The effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisor's confidence and the employee's ability to perform assigned duties;

6. Consistency of the penalty with those imposed upon other employees for the same or similar offenses;

7. Consistency of the penalty with the applicable agency table of penalties (The board mused in footnotes that these tables are not to be applied mechanically so that other facts are ignored. A penalty may be excessive in a particular case even if with the range permitted by statute or regulations. A penalty grossly exceeding that provided by an agency's standard table of penalties may for that reason alone be arbitrary and capricious, even though such a table provides only suggested guidelines);

8. The notoriety of the offense or its impact upon the reputation of the agency;

9. The clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;

10. Potential for employee's rehabilitation;

11. Mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and

12. The adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

In *Douglas*, it was noted that some of those factors may be pertinent to other issues as well as penalty selection, such as the alleged connection between the employee's conduct and the efficiency of the service. With respect to DUSM Andreski, we submit the following for consideration:

1. **Lack of intent to commit any offense or violation.** None of DUSM Andreski's actions were intended to disrespect anyone nor to violate Agency proscriptions. His motives were pristine, even if the USMS ultimately determines that he made mistakes along the way.

2. **DUSM Andreski has been employed in service to the USMS for over seven years has been in the Federal Service for over 11 years. He has been a proud and loyal employee.** She has served in an exemplary manner. Consideration of this factor requires that the seriousness of the offense be balanced against the length and success of an employee's previous government service. *Miguel v. Dept. of the Army*, 7217 F.2d 1081 (Fed. Cir. 1984); *Banez v. Dept of Defense*, 60 MSPR 642 (1996); *Skates v. Dept of the Army*, 69 MSPR 366 (1996); *Gomez v. Dept. of Agriculture*, 68 MSPR 202 (1995). The record herein does not suggest that a serious or intentional offense was committed. The weight of DUSM Andreski's successful and exemplary career clearly outweighs any mistake he may have made. A four day suspension is certainly not called for in this matter.

3. **DUSM Andreski's ability to perform his duties in an exemplary manner has not been compromised by the incident at issue herein.** The analysis of

these factors clearly demonstrates that the four day suspension of DUSM Andreski is inappropriate. His ability to continue to perform at an exemplary level has not been compromised.

**4. The disparate treatment DUSM Andreski has been afforded when compared to that offered to his fellow deputies.**

**5. The bad faith and ill will of DUSM Andreski's Chief Deputy toward DUSM Andreski, which extends even to threats against DUSM Andreski and violation of DUSM Andreski's employee and Equal Employment Opportunity rights.**

With all due respect to the USMS, the above-mentioned mitigating factors, in addition to the circumstances of the instant matter, should operate to rescind the proposed disciplinary action. Under the totality of circumstances as described herein, the proposal to suspend DUSM Andreski for four days is clearly inappropriate and unjust.

"Efficiency of the Service" and "Just Cause" are the standards to which Government agencies must adhere before taking disciplinary action. Agency managers and supervisors have the right and responsibility to use discipline to control the conduct of their employees. However, discipline can only be imposed where there is sufficient and justified reason for doing so. In the instant matter, the Service has failed to produce evidence sufficient to demonstrate that the current disciplinary action was motivated solely to promote the efficiency of the service. In addition, given the length and nature of DUSM Andreski's Federal career and the nature of the events at issue herein, the proposed four day suspension is far too severe and is not designed to promote the efficiency of the service. The USMS' disciplinary goals can be achieved in the instant matter without the imposition of such a severe suspension.

## CONCLUSION

In light of the foregoing, it is respectfully requested that the four day suspension of DUSM Andreski from his position with the United States Marshals Service be rescinded in its entirety and/or mitigated to a much lesser penalty more in keeping with the efficiency of the Service.

Thank you for your consideration in this matter.

Respectfully Submitted,

Lawrence Berger,

General Counsel

Candidate 85 but was later forced to admit that he had. These rather suspicious rankings and Grubbs's attempted cover-up support a finding of pretext.

There is other evidence from which a reasonable jury could find that Grubbs's proffered reasons for ranking Jankowski above Philbrick are unworthy of belief. Although Grubbs testified that Deputy U.S. Marshal Lori Ciotti told him that she favored Jankowski over Philbrick, Ciotti denies that Grubbs ever asked for her opinion. Grubbs also testified that USMS employee Russ Tithof complained to him that Philbrick spent too much time in the gym and delegated supervisory duties to subordinates. Tithof, however, denied making those statements.

Chief Deputy U.S. Marshal James Andreski, who had supervised both Jankowski and Philbrick in the past, told Grubbs that he thought that Philbrick was the better candidate. Even though Andreski would be supervising whichever applicant was selected, Grubbs did not tell him that he planned to recommend Jankowski instead. When Philbrick was passed over the second time for a promotion, Andreski expressed his belief that "something stinks."

Viewing all of this evidence in light most favorable to Philbrick and drawing all reasonable inferences in her favor, we find a genuine issue of material fact as to whether the Attorney General's claim that Jankowski was the better qualified candidate is pretextual.

The court then turns to Grubbs's second asserted reason for making the recommendation he did. Grubbs testified that the "number one" reason he recommended Jankowski over Philbrick was his firm, but ultimately mistaken, belief that she was ineligible for a promotion because of the pending internal affairs investigation concerning her niece. As previously noted, the "honest belief" rule is a viable defense only if the employer made a "reasonably informed and considered decision." *Smith*, 155 F.3d at 807–08.

Father

Page 22

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 14a0727n.06**

**No. 13-2569**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED
Sep 16, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| **SUSAN PHILBRICK,** **Plaintiff-Appellant,** | ) | |
| **v.** | ) | **ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN** |
| **ERIC HOLDER, JR., Attorney General,** **Defendant-Appellee.** | ) | **OPINION** |

Before: COOK and GRIFFIN, Circuit Judges; and RICE, District Judge.*

RICE, District Judge. Susan Philbrick, an employee of the United States Marshals Service, appeals from the district court's order granting Attorney General Eric Holder, Jr.'s, motion for summary judgment. She maintains that she was discriminated against on the basis of sex and race when she was passed over for a promotion in 2009. She also maintains that she was discriminated against on the basis of sex and was retaliated against for having filed a complaint of discrimination with the Equal Employment Opportunity Commission when she was passed over for a subsequent promotion in 2011. For the reasons set forth below, we AFFIRM IN PART and REVERSE AND REMAND IN PART.

## I.

Susan Philbrick, a white female, has been employed by the United States Marshals Service ("USMS") since 1989. She served as a Supervisory Deputy United States Marshal in the Western District of Michigan from 1998 until 2001, and has served in that same role in the Eastern District

*The Honorable Walter H. Rice, United States District Judge for the Southern District of Ohio, sitting by designation.

of Michigan since 2002. In April of 2009, Philbrick applied for a position as Assistant Chief Deputy U.S. Marshal ("ACDUSM") in the Eastern District of Michigan.

Pursuant to the Merit Promotion Selection Process, after a vacancy is posted, the Human Resources division of the USMS develops a list of the best qualified candidates for that position. Each applicant is assigned a numerical score based on education, experience, training, and awards. This score is combined with the applicant's score on the merit promotion examination to create a package score. This package score is used only to develop a list of the best qualified candidates; it is not shared with anyone else involved in the hiring decision. The best qualified candidates then participate in a structured interview, during which they are evaluated by a three-person panel for perception, decisiveness, judgment, leadership, organization and planning, adaptability, interpersonal skills, and oral communication.

The U.S. Marshal for the district where the vacancy exists then reviews the resumes and interview ratings of the best qualified candidates, ranks them, and makes a recommendation to the Career Board. The Career Board consists of USMS law enforcement employees appointed by the Director of the USMS ("the Director"). It meets about four times each year and reviews the recommendations for 45-100 job vacancies at each meeting. In order to expedite the process, the chairperson of the Career Board assigns one "Presenter" for each vacancy. The Presenter is charged with reviewing the resumes, interview ratings, and the Marshal's recommendation for the open position, and making his or her own recommendation to Career Board. In turn, the Career Board makes a recommendation to the Director, who makes the final decision.

When Philbrick applied for the ACDUSM position in 2009, she had the highest package score of all of the applicants. In addition, her supervisor, Marshal Robert Grubbs, ranked her first

among the five best qualified applicants and recommended that she be hired. Grubbs ranked Thomas Smith second and Roberto Robinson third.

Robert Fagan, the chairperson of the Career Board, assigned himself as the Presenter for this position. Fagan, however, did not follow Marshal Grubbs' recommendation. Instead, he recommended Roberto Robinson, a Hispanic male, for the position. The Career Board and Director John Clark followed suit, and Robinson was hired as the ACDUSM for the Eastern District of Michigan. On July 27, 2009, Philbrick filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was denied the promotion based on race and gender discrimination.

In November of 2009, Philbrick became the subject of an Internal Affairs investigation after being accused of improperly recommending her niece for a position with the agency. This investigation was still ongoing in January of 2011 when Roberto Robinson received another promotion and was appointed Chief Deputy U.S. Marshal in the Northern District of Ohio. When the opening for his ACDUSM position in the Eastern District of Michigan was posted, Philbrick again applied.

On January 31, 2011, the EEOC commenced a hearing on Philbrick's charge of discrimination arising from her non-promotion in April of 2009. At that hearing, Marshal Grubbs was harshly cross-examined by counsel for the agency concerning his motives for recommending Philbrick for the promotion and the procedures he followed. The hearing was continued until March 28, 2011.

In the meantime, on March 4, 2011, Marshal Grubbs recommended Mark Jankowski, a white male, for the open ACDUSM position. Grubbs ranked Philbrick third among the best

qualified candidates, behind Jankowski and "Candidate 85." Grubbs then received notice that, due to Philbrick's pending EEO charge, the position would be held in abeyance pending completion of those proceedings.

Grubbs was subsequently given a new list of best qualified candidates for the ACDUSM position. This time, he ranked Jankowski first and Philbrick second. John Clark was assigned as the Presenter.[1] Clark recommended Jankowski to the Career Board. In turn, the Career Board recommended Jankowski to Director Stacia Hylton, who appointed Jankowski to fill the position.

On September 19, 2011, Philbrick filed another complaint with the EEOC, alleging gender discrimination and retaliation in connection with the most recent failure to promote her. Philbrick later filed suit against her employer, Attorney General Eric Holder, Jr. Her Amended Complaint alleged race and gender discrimination in connection with her 2009 non-promotion and gender discrimination and retaliation in connection with her 2011 non-promotion.

The district court granted the Attorney General's motion for summary judgment in its entirety, finding no genuine issue of material fact on any of Philbrick's claims. Philbrick now appeals that decision.

## II.

We review *de novo* a district court's ruling on a motion for summary judgment. *Bickley v. Dish Network, LLC*, 751 F.3d 724, 728 (6th Cir. 2014). Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." We must view facts in the record and reasonable inferences that can be drawn from those facts in the light most

[1]This John Clark is not the same John Clark who was the Director of the USMS when Robinson was hired in 2009.

favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). We do not weigh evidence, assess credibility of witnesses, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**III.**

Title VII of the Civil Rights Act of 1964 prohibits federal agencies from employment discrimination "based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–16(a). It is a violation of Title VII to fail to promote an employee because of his or her membership in a protected class. *See, e.g.*, *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005).

A plaintiff may establish a claim of discrimination either by presenting direct evidence of discrimination or by presenting circumstantial evidence that would support an inference of discrimination. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). Where, as here, the claim is based on circumstantial evidence, we use the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973).

Under that framework, a plaintiff must first establish a prima facie case of discrimination, the elements of which vary slightly depending on the theory asserted. To establish a prima facie case of discrimination based on a "failure to promote" theory, a plaintiff must demonstrate that:

> (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied.

*White*, 429 F.3d at 240. A plaintiff's burden at the prima facie stage is "not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed.2d 207 (1981).

If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for its adverse action. If the defendant satisfies its burden, the burden shifts back to the plaintiff to identify evidence from which a reasonable jury could find that the stated reason is a pretext for discrimination. Pretext is demonstrated "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

In order "to survive summary judgment, a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale." *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2012) (quoting *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 532 (6th Cir. 2007)). The plaintiff is not required to also produce evidence that discrimination was the real reason for the adverse employment action. *Id. See also Hamilton v. Geithner*, 666 F.3d 1344, 1351 (D.C. Cir. 2012) ("[W]e do not routinely require plaintiffs to submit evidence over and above rebutting the employer's stated explanation in order to avoid summary judgment.") (internal quotation marks omitted). As the Supreme Court noted in *Reeves v. Sanderson Plumbing Products, Inc.*:

> [A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.
> This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.

530 U.S. 133, 148, 120 S. Ct. 2097, 2109, 147 L. Ed. 2d 105 (2000).

**A.**

Philbrick maintains that she was discriminated against on the basis of race and gender in connection with the 2009 ACDUSM promotion when Roberto Robinson, a Hispanic male, was selected instead of her.

1. Reverse Race Discrimination

The district court granted summary judgment in favor of the Attorney General on Philbrick's reverse race discrimination claim. Noting that "[a]n employer cannot intentionally discriminate against an individual on the basis of race if he is unaware of that individual's race," *Johnson v. N.W. Airlines*, No. 94-1076, 1995 WL 242001, at *3 (6th Cir. Apr. 24, 1995), the court found that Philbrick had failed to create a genuine issue of material fact concerning whether Director John Clark, the ultimate decision-maker, knew that she was Caucasian. Philbrick claimed that she had briefly met Clark on one occasion several years earlier. Clark, however, testified that he had no memory of meeting her.

On appeal, Philbrick argues that because Presenter Fagan was the *de facto* decision-maker, the relevant question is whether Fagan knew that she was Caucasian. *See Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1192 (2011) (discussing the "cat's paw" theory of liability). Although she does not allege that Fagan knew her personally, she claims that Fagan should have inferred that she was Caucasian based solely on USMS workforce demographic statistics. Workforce statistics, however, are insufficient to create a genuine issue of material fact concerning whether Fagan knew that Philbrick was Caucasian. The district court properly found that Philbrick failed to create a genuine issue of disputed fact concerning whether the decision-makers were aware of her race.

When Robinson was selected for the position instead of Philbrick, Grubbs speculated that perhaps the agency was trying to right past wrongs in terms of discrimination against minorities. Fagan allegedly knew that Robinson was Hispanic because Robinson was formerly in Fagan's chain-of-command. Fagan and Clark admit that diversity is considered in every hiring decision but contend that Robinson was selected not because of his race but because of his superior qualifications.

Even if the decision-makers did know that Philbrick was Caucasian, summary judgment would still be warranted on this claim. Given that this is a case involving a claim of *reverse* race discrimination, Philbrick faces a higher burden. In order to establish a prima facie case of reverse race discrimination, she must show "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002) (quoting *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985)). Here, Philbrick presented no evidence to support such a finding.

For all of these reasons, the district court properly granted summary judgment in favor of the Attorney General on Philbrick's claim of reverse race discrimination.

2. Gender Discrimination

Philbrick also argues that she was discriminated against in connection with the 2009 promotion on the basis of her gender. Because she has no direct evidence of gender discrimination, the *McDonnell Douglas* burden-shifting framework applies. The first three elements of Philbrick's prima facie case are undisputed. At issue is whether Philbrick and Robinson had similar qualifications for the ACDUSM position.

The Attorney General argued that Philbrick could not establish a prima facie case of discrimination because she could not show that she and Robinson were similarly qualified. The district court assumed, without deciding, that Philbrick had established a prima facie case of discrimination and moved on to the next stages of the *McDonnell Douglas* analysis.

On appeal, the Attorney General contends that, because Philbrick cannot satisfy the fourth element of her prima facie case, the district court need not have inquired any further. He invites the court to engage in a detailed comparison of the relative qualifications of Philbrick and Robinson. However, at the prima facie stage, the court compares the qualifications of the two applicants in very general terms, leaving the more rigorous analysis for the later stages of the *McDonnell Douglas* test. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813–14 (6th Cir. 2011). In this case, Philbrick and Robinson both had considerable training and experience, both were on the list of "best qualified" candidates, and both were ranked among the top three candidates by Marshal Grubbs. Under these circumstances, the district court properly assumed, without deciding, that Philbrick had established a prima facie case of gender discrimination.[2] *Id.* at 814 (holding that although the candidates had different strengths and weaknesses, their education and experience made them similarly qualified for purposes of a prima facie case).

[2]The district court also properly refused to address the Attorney General's argument that Philbrick could not establish a prima facie case of gender discrimination because she admitted that Thomas Smith, a similarly-situated male whom Grubbs ranked second, was *also* passed over for the promotion in favor of Robinson. Citing *Zambetti*, 314 F.3d at 255, the Attorney General argued that, under the fourth prong of the prima facie case, Philbrick must show that a similarly-situated male, *i.e.*, Thomas Smith, was treated differently than she was. For purposes of establishing a prima facie case, however, the relevant question is whether Philbrick and Robinson—the person who was selected for the position—possessed similar qualifications. *See Provenzano*, 663 F.3d at 814 ("In a failure to promote claim, the emphasis in the fourth element is on the relative qualifications of the plaintiff and the employee who actually received the promotion.").

The district court then found that the Attorney General had articulated a legitimate, non-discriminatory reason for selecting Robinson for the ACDUSM position. More specifically, the Attorney General presented evidence that Robinson was selected because he had better interview scores and was perceived to have a more well-rounded background. The district court then concluded that Philbrick had failed to present sufficient evidence from which a reasonable jury could find that the proffered reason was pretextual. It therefore granted summary judgment in favor of the Attorney General on Philbrick's claim of gender discrimination.

On appeal, Philbrick argues that genuine issues of material fact preclude summary judgment on this claim. We agree. Philbrick maintains that she was the better qualified candidate and should have been selected instead of Robinson. In *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457, 126 S. Ct. 1195, 163 L. Ed.2d 1053 (2006), the Supreme Court held that "qualifications evidence may suffice, at least in some circumstances, to show pretext." In most situations, an employer wants to hire the best qualified candidate. If an applicant is significantly better qualified than the competition, but not selected, it can be inferred that discrimination played a part in the decision. *Hamilton*, 666 F.3d at 1352 (citing *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en banc)).

> "Relative qualifications establish triable issues of fact as to pretext where the evidence shows that either (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified as if not better qualified than the successful applicant, and the record contains 'other probative evidence of discrimination.'" *Bartlett v. Gates*, 421 Fed. Appx. 485, 490–91 (6th Cir. 2010) (citing *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627–28 (6th Cir. 2006)).

*Provenzano*, 663 F.3d at 815.

Here, Philbrick's claim survives summary judgment because she was the plainly superior candidate. As previously noted, Philbrick's package score was the highest of all of the applicants, although this fact was not shared with any of the relevant decision-makers. Admittedly, Robinson performed better than Philbrick in the interview. Philbrick received five "average" and three "weak" interview ratings; Robinson received five "strong" and three "average" ratings. However, because these ratings are inherently subjective, they deserve careful scrutiny. *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 93 (6th Cir. 1982).

After reviewing the interview scores and the resumes, Marshal Grubbs recommended that Philbrick be selected for the job. She had twenty years of experience with the USMS, including eleven years as a Supervisory Deputy U.S. Marshal and a stint as Acting ACDUSM. Not only had she worked as a supervisor in two different districts, but she had significant supervisory experience in each of the areas that the ACDUSM job entails: judicial security, court security, prisoner operations, enforcement, and asset forfeiture. She had also performed numerous collateral duties. Moreover, she had initiated and implemented the Detroit Fugitive Apprehension Team, which was very successful. Grubbs also factored in Philbrick's strong leadership skills, interpersonal skills, and dedication to the job, along with her existing ties to the District.

In comparison to Philbrick, Robinson had only twelve years of experience with the USMS and only three years of experience as a Supervisory Deputy U.S. Marshal. He had not performed nearly as many collateral duties as Philbrick and had no ties to the Eastern District of Michigan. He had little or no experience supervising judicial security or enforcement. However, he had assisted in evacuation, rescue, and recovery efforts during the 9/11 terrorist attacks, was a training

officer for TDY Inspectors at USMS headquarters, and acted as a Contract Officer Technical Representative. In addition, he had Top Secret clearance and was working as a Supervisory Deputy U.S. Marshal in a large sub-office in Fort Lauderdale.

Even if Robinson arguably had a broader overall range of experience than Philbrick did, she clearly had significantly more relevant supervisory experience. From an objective standpoint, she was a plainly superior candidate, such that no reasonable employer would have chosen Robinson over her. As such, there is a triable issue of fact as to pretext. *Provenzano*, 663 F.3d at 815. This is particularly true, given Fagan's concession at the EEOC hearing that Philbrick was better qualified than Robinson.

Even if Philbrick was not the "plainly superior" candidate, she was at least as qualified as Robinson, there is other evidence in the record from which a reasonable jury could find that the Attorney General's explanation for selecting Robinson is unworthy of belief. *See Hamilton*, 666 F.3d at 1352 (noting that other flaws in the employer's explanation may also be indicative of pretext).

Evidence shows that 91–96% of the time, the Presenter adopts the U.S. Marshal's recommendation, the Career Board adopts the Presenter's recommendation, and the Director adopts the Career Board's recommendation. Although no one is bound by the recommendation made at the lower level, it is the exception rather than the rule that the candidate recommended by the Marshal is not selected to fill the position. Grubbs testified that on the few occasions that his recommendation was not followed, he was contacted to discuss the applicants before any final decision was made. In this case, no one contacted him before rejecting his recommendation. These procedural irregularities are not determinative, but they do arouse suspicion of pretext.

A reasonable jury could find that Fagan was the *de facto* decision-maker in this case. As was usually the case, his recommendation was followed by the Career Board and by the Director. Although the Career Board and the Director have access to the same application materials the Presenter does, evidence shows that their review of those materials is generally not nearly as thorough as the Presenter's. Here, Director Clark testified that if the Career Board had recommended Philbrick, he would have followed that recommendation.

In Fagan's notes for his presentation to the Career Board, he wrote that he was recommending Robinson rather than Philbrick because Philbrick had worked her whole career in Detroit and had not interviewed as well, and because Robinson was more well-rounded, having served as a Supervisory Deputy U.S. Marshal in Miami and Fort Lauderdale and at USMS headquarters. Fagan has subsequently admitted that he mistakenly overlooked Philbrick's supervisory experience in the Western District of Michigan. He has also admitted that Robinson's supervisory experience pales in comparison to Philbrick's, and that Robinson had no major accomplishments comparable to Philbrick's initiation of the fugitive task force. At the EEOC hearing, Fagan conceded that Philbrick was "the more qualified" candidate.

Fagan nevertheless attempted to justify his recommendation by citing to alleged flaws in Philbrick's resume and Grubbs's recommendation. In hindsight, he argues that Philbrick's application did not adequately highlight all of her accomplishments, and that Grubbs's recommendation was "too vague." He testified that but for these inadequacies, he "would have definitely, definitely recommended Ms. Philbrick." Fagan admits, however, that based on Philbrick's resume, and particularly her service as an Acting ACDUSM, he could infer the breadth

of her experience. As to the claim that Grubbs's recommendation was "too vague," Fagan admits that he has sometimes chosen candidates with much less specific recommendations.

Typically, the court allows an employer wide leeway in determining relevant hiring criteria, particularly when selecting management personnel. *See Browning v. Dep't of the Army*, 436 F.3d 692, 698 (6th Cir. 2006). Nevertheless, the court will not blindly accept an employer's alleged business judgment in the face of a claim of discrimination. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003).

Under the "honest belief" rule, if the employer honestly, but mistakenly, believes in the proffered reason given for the hiring decision at issue, then the employee cannot establish the requisite pretext. *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998). However, in order to establish an honestly held belief, the employer must produce evidence that it made a "reasonably informed and considered decision." *Id.* at 807. If the asserted business judgment is so "ridden with error" that the employer could not have honestly relied on it, pretext may be shown. *In re Lewis*, 845 F.2d 624, 633 (6th Cir. 1988) (quoting *Lieberman v. Gant*, 630 F.2d 60, 65 (2d Cir. 1980)). *See also Smith*, 155 F.3d at 807 (noting that the relevant inquiry is whether the error was "too obvious to be unintentional").

Here, Philbrick has presented sufficient evidence from which a reasonable jury could find that Fagan did not make a reasonably informed and considered decision that Robinson was the better qualified candidate, and that the proffered reason for selecting Robinson is unworthy of belief. Fagan's summary rejection of Grubbs's recommendation, his significant oversights in comparing the qualifications of the two candidates, and his shifting explanations for why he recommended Robinson instead of Philbrick, combine to create triable issues of fact. *See*

*Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext.").

According to the dissent, the irregularities in the selection process, Fagan's oversights concerning Philbrick's qualifications, and his alleged reasons for not accepting Grubbs's recommendation do not constitute evidence of illegal discrimination, but are instead "qualifications evidence, repurposed by plaintiff as evidence of discrimination." We disagree. As this court held in *Jenkins v. Nashville Public Radio*, 106 F. App'x 991 (6th Cir. 2004), cited and distinguished by the court in *Bender*, 455 F.3d at 627, evidence of "irregularities in the application and selection process" and "inconsistencies in the reasons given by [the employer] for not hiring [plaintiff]," along with "evidence of her allegedly superior qualifications, which, if believed by the trier of fact, could lead to the conclusion" that the plaintiff was discriminated against, is sufficient to raise a genuine issue of material fact concerning pretext. *Jenkins*, 106 F. App'x at 995.

Admittedly, Philbrick points to little evidence of a gender-based discriminatory animus. Nevertheless, as the Supreme Court noted in *Reeves*, "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." 530 U.S. at 147. Although this is a close call, we must draw all reasonable inferences in Philbrick's favor. It may be inferred that the relevant decision-makers knew that Philbrick was a female based on her first name, Susan. In light of Fagan's admission that Philbrick had superior qualifications, we believe that a reasonable jury could find that Philbrick was a victim of gender discrimination. We therefore reverse the district court's order granting summary judgment in favor of the Attorney General on Philbrick's claim of gender discrimination in connection with the 2009 promotion.

**B.**

Philbrick also maintains that she was again discriminated against on the basis of gender when she was passed over for the ACDUSM promotion in 2011, this time in favor of Mark Jankowski. Grubbs recommended that Jankowski be offered the position. Presenter John Clark and the Career Board concurred in that recommendation, as did Director Stacia Hylton.

Again, the district court appears to have assumed, without deciding, that Philbrick could establish a prima facie case of gender discrimination. The court found that the Attorney General had articulated legitimate, non-discriminatory reasons for hiring Jankowski instead of Philbrick, in that Grubbs believed that Jankowski was better qualified. He touted Jankowski's experience, leadership abilities, judgment, and organizational skills. Presenter Clark also testified that, in his opinion, Jankowski had a stronger resume. Grubbs further believed that Philbrick was ineligible for promotion due to the pending Internal Affairs investigation involving her niece.

The district court found that Philbrick had failed to establish a genuine issue of material fact as to whether the proffered reasons were pretextual. On appeal, Philbrick argues that the district court erred in so finding. Notably, however, Philbrick devotes very little of her appellate brief to this claim of gender discrimination. She concedes that, with respect to the 2011 promotion, her "principal contention" is that she was denied the promotion in retaliation for filing her EEOC charge.

For the reasons set forth in the next section of this opinion, we find that Philbrick has presented sufficient evidence from which a reasonable jury could find that the proffered reasons for hiring Jankowski were pretextual. Nevertheless, this is one of those cases discussed in *Reeves* where "although the plaintiff has established a prima facie case and set forth sufficient evidence to

reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." 530 U.S. at 148.

Indeed, the only evidence of gender discrimination identified by Philbrick is Grubbs's statement that Jankowski is a "stronger field general." Philbrick maintains that this indicates sex stereotyping. This singular characterization is woefully insufficient to create a genuine issue of material fact concerning whether Philbrick was denied the promotion because she is a woman. Moreover, the fact that Grubbs recommended Philbrick for the promotion in 2009 cuts against a finding that he had a discriminatory animus in recommending Jankowski in 2011. In *Wexler*, we held that one can infer a lack of discrimination from the fact that the same individual both hired and fired the employee. 317 F.3d 564, 572–73 (6th Cir. 2003). This "same actor" inference can logically be extended to this situation. Having previously recommended Philbrick for the 2009 promotion, it can be inferred that Grubbs, whose 2011 recommendation was adopted by the ultimate decision-maker, had no gender-based discriminatory animus.

For these reasons, we affirm the district court's decision to grant summary judgment in favor of the Attorney General on Philbrick's claim of gender discrimination in connection with the 2011 failure to promote.

## IV.

Finally, Philbrick alleges that she was passed over for the 2011 promotion in retaliation for having filed a charge of race and gender discrimination with the EEOC in 2009. Title VII makes it unlawful for an employer to retaliate against an employee because that employee opposed a discriminatory practice or made a charge of discrimination. 42 U.S.C. § 2000e-3(a). As with a

claim of discrimination, a plaintiff may establish a claim of retaliation either through direct or circumstantial evidence, using the same *McDonnell Douglas* burden-shifting framework.

In the absence of direct evidence of retaliation, a plaintiff may establish a prima facie case of retaliation under Title VII by demonstrating that: "(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quoting *Jones v. Johanns,* 264 F. App'x 463, 466 (6th Cir. 2007). With respect to the "causal connection," the plaintiff must establish that "but for" the protected activity, the materially adverse action would not have occurred. *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2532–33 (2013).

If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse action. If the defendant satisfies its burden, the plaintiff must then demonstrate that the stated reason is pretextual. *Laster*, 746 F.3d at 730.

Here, the first three elements of the prima facie case are undisputed. The district court, however, found insufficient evidence of any causal connection between Philbrick's filing of the EEOC charge and the failure to promote her in 2011. Philbrick argued that Grubbs testified at her EEOC hearing on January 31, 2011, and was subject to harsh cross-examination by counsel for the USMS concerning the allegedly improper bases for Grubbs's recommendation that Philbrick be hired for the ACDUSM position in 2009 and Grubbs's alleged failure to follow agency interviewing policies. Grubbs was also chastised for having told Philbrick of his

recommendation before the Director made a final decision. Other USMS employees were also required to testify at the hearing. Less than five weeks after the hearing, on March 4, 2011, Grubbs submitted his recommendation for the again-vacant ACDUSM position. This time, he ranked Philbrick third, below Jankowski and Candidate 85. Philbrick maintains that Grubbs felt pressured by his superiors to recommend someone other than her.

The district court acknowledged that, in some cases, temporal proximity between the adverse employment action and the protected activity may be enough to establish the requisite causal connection. *See, e.g., Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.").

The district court found, however, that the adverse employment action at issue did not occur until July of 2011, when Director Hylton made the final decision to hire Jankowski instead of Philbrick. This widened the temporal gap from five weeks to six months, which the court found to be too long to establish the requisite causal connection. The court further noted that Grubbs revised his rankings in May of 2011, upgrading Philbrick's ranking from third to second.

On appeal, Philbrick argues that the district court erred in finding that she had failed to create a genuine issue of material fact concerning the requisite causal connection. We agree. As an initial matter, the district court erred in establishing July of 2011, the date the final decision was made to hire Jankowski, as the date of the adverse employment action. In *Hamilton*, the court held that it was appropriate to consider when the employer "took a first step toward the adverse action." 666 F.3d at 1358. In this case, the "first step" was Grubbs's March 4, 2011,

recommendation, when he ranked Philbrick third, behind Jankowski and Candidate 85. The fact that he subsequently revised his recommendation, ranking her second, behind Jankowski, is largely irrelevant given that Jankowski was still his top pick and that Presenter Clark, the Career Board, and Director Hylton all followed his recommendation.

Therefore, the question is whether the five-week gap between the January 31, 2011, hearing, and the March 4, 2011, initial recommendation is close enough to establish a causal connection. Standing alone, probably not. "[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey*, 516 F.3d at 525. *See also Montell v. Diversified Clinical Servs., Inc.*, –F.3d–, 2014 WL 2898525, at *6 (6th Cir. June 27, 2014) (noting that "combining temporal proximity with other evidence of retaliatory conduct is enough to establish a causal connection").

Notably, the court may also consider evidence of pretext to buttress this prong of the prima facie case. In *Cantrell v. Nissan North America Inc.*, 145 F. App'x 99, 107 n.2 (6th Cir. 2005), we noted the "overlap between the causal connection requirement and a showing that the proffered reason for termination was not the actual reason," and held that, in retaliation cases, the same type of evidence may be used to prove both.

Drawing all reasonable inferences in favor of Philbrick and considering not only the temporal proximity but also the evidence that the proffered reason for hiring Jankowski was pretextual, as discussed below, we find that there is a genuine issue of material fact concerning the requisite causal connection. Based on the evidence presented, a reasonable jury could find that, but for the fact that Philbrick filed the EEOC charge of discrimination, Grubbs would have

recommended her for the ACDUSM vacancy, and she would have been selected for the job. Presenter Clark testified that he would have concurred had Grubbs recommended Philbrick instead. Likewise, Director Hylton testified that she would have selected Philbrick had the Career Board so recommended. We therefore conclude that Philbrick has established a prima facie case of retaliation.

The Attorney General satisfied his burden of articulating legitimate, non-retaliatory reasons for selecting Jankowski instead of Philbrick. As noted earlier, Grubbs cited two such reasons: (1) Jankowski was better qualified; and (2) Grubbs believed that Philbrick was ineligible for promotion due to the pending Internal Affairs investigation.

Where the employer asserts more than one reason for the adverse employment decision, the plaintiff must prove that each reason is pretextual. *Smith*, 155 F.3d at 806. With respect to the first reason asserted, Jankowski's allegedly superior qualifications, Philbrick seeks to establish pretext by showing that this did not actually motivate the decision. She contends that the circumstantial evidence makes it more likely than not that retaliation was the true reason she was not promoted. Philbrick maintains that, based on the harsh cross-examination Grubbs endured by USMS counsel at the EEOC hearing, he felt compelled to recommend someone else for the vacancy.

In March of 2011, Grubbs ranked Philbrick not only behind Jankowski, but also behind Candidate 85, whose qualifications were clearly inferior to hers. Notably, when he revised his rankings in May of 2011, Grubbs ranked Candidate 85 behind Candidate 84, who had no supervisory experience at all. Philbrick notes that Grubbs initially denied ranking her below

Candidate 85 but was later forced to admit that he had. These rather suspicious rankings and Grubbs's attempted cover-up support a finding of pretext.

There is other evidence from which a reasonable jury could find that Grubbs's proffered reasons for ranking Jankowski above Philbrick are unworthy of belief. Although Grubbs testified that Deputy U.S. Marshal Lori Ciotti told him that she favored Jankowski over Philbrick, Ciotti denies that Grubbs ever asked for her opinion. Grubbs also testified that USMS employee Russ Tithof complained to him that Philbrick spent too much time in the gym and delegated supervisory duties to subordinates. Tithof, however, denied making those statements.

Chief Deputy U.S. Marshal James Andreski, who had supervised both Jankowski and Philbrick in the past, told Grubbs that he thought that Philbrick was the better candidate. Even though Andreski would be supervising whichever applicant was selected, Grubbs did not tell him that he planned to recommend Jankowski instead. When Philbrick was passed over the second time for a promotion, Andreski expressed his belief that "something stinks."

Viewing all of this evidence in light most favorable to Philbrick and drawing all reasonable inferences in her favor, we find a genuine issue of material fact as to whether the Attorney General's claim that Jankowski was the better qualified candidate is pretextual.

The court then turns to Grubbs's second asserted reason for making the recommendation he did. Grubbs testified that the "number one" reason he recommended Jankowski over Philbrick was his firm, but ultimately mistaken, belief that she was ineligible for a promotion because of the pending internal affairs investigation concerning her niece. As previously noted, the "honest belief" rule is a viable defense only if the employer made a "reasonably informed and considered decision." *Smith*, 155 F.3d at 807–08.

Philbrick has presented evidence that even though she and ACDUSM Commins both asked Grubbs to check to see if the pending investigation disqualified Philbrick from being considered for promotion, Grubbs made no such inquiry. She also presented evidence that although Grubbs later claimed that he was told by the Chief of Internal Investigations and by Human Resources officers that Philbrick would be ineligible for a promotion, they have denied making any such statements to Grubbs, and they agree that Philbrick would, in fact, be eligible for promotion despite the pending investigation. Finally, Philbrick notes that even though Grubbs maintains that she was ineligible for promotion, he did not tell her that. Instead, he actively misled her into believing that she was a serious contender for the ACDUSM position despite the ongoing investigation. Based on this evidence, a reasonable jury could find that Grubbs did not honestly believe that the Internal Affairs investigation rendered Philbrick ineligible for promotion.

Grubbs maintains that even if he thought that Philbrick was eligible for promotion, he would have recommended Jankowski anyway based on his superior credentials. For reasons previously discussed, there is a triable issue of fact concerning whether this proffered reason is worthy of belief.

Given that we find genuine issues of material fact with respect to a causal connection and pretext, we reverse the district court's order granting summary judgment in favor of the Attorney General on Philbrick's retaliation claim.

## V.

In conclusion, we AFFIRM the district court's order granting summary judgment in favor of Defendant-Appellee Attorney General Eric Holder, Jr., with respect to Plaintiff-Appellant Susan Philbrick's claim of reverse race discrimination in connection with the 2009 promotion and

her claim of gender discrimination in connection with the 2011 promotion. However, we REVERSE the district court's order granting summary judgment in favor of the Attorney General with respect to Philbrick's claim of gender discrimination in connection with the 2009 promotion and her claim of retaliation in connection with the 2011 promotion, and REMAND for further proceedings consistent with this opinion.

GRIFFIN, Circuit Judge, concurring in part and dissenting in part.

Balancing an employee's right against illegal discrimination against the employer's prerogative to make fundamental managerial decisions regarding whom to hire, fire, and promote is a central concern in employment discrimination cases. Our judicial duty requires us to reverse violations of the law, not to place a thumb on the scale in favor of a particular employment outcome. Indeed, we have cautioned our courts against adopting the "illegitimate role of acting as . . . 'super personnel department[s],'" when attempting to strike this balance. *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 627 (6th Cir. 2006) (citation omitted). In my view, the majority crosses this line by impermissibly "overseeing and second guessing [the] employer['s] business decisions." *Id.* Accordingly, I respectfully concur in part and dissent in part. I would affirm the summary judgment granted in favor of the attorney general on all claims.

I.

First, turning to plaintiff's 2009 failure-to-promote claim, I disagree with the majority that plaintiff has shown pretext based on her "plainly" superior qualifications. The leading Sixth Circuit case addressing qualifications evidence in employment is *Bender v. Hecht's Department Stores*. *Bender* was decided shortly after *Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006). In *Ash*, the Supreme Court addressed the Eleventh Circuit's standard that "[p]retext can be established through comparing qualifications *only* when the disparity in qualifications is so apparent as to virtually jump off the page and slap you in the face." *Id.* at 456–57 (emphasis added; citation omitted). The Court rejected this formulation, noting that it had previously held, in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 259 (1981), that an employer misjudging an applicant's qualifications "may be probative" of whether the employer's reasons for

the employment decision were pretext for discrimination. *Id.* at 457. Accordingly, the *Ash* Court held that "qualifications evidence may suffice, at least in some circumstances, to show pretext." *Id.* However, the Court declined to "define more precisely what standard should govern pretext claims based on superior qualifications." *Id.* at 458.

*Bender* addressed a relative-qualifications pretext claim post-*Ash*. Our court in *Bender* explained that "acknowledging that evidence of comparative qualifications 'may be probative' of pretext is a far cry from holding that such evidence is itself sufficient in all cases to raise a genuine issue of fact of discriminatory motive." *Bender*, 455 F.3d at 626. *Bender* thus explained what was required of a plaintiff in a relative-qualifications case:

> Whether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents *other evidence of discrimination*. In the case in which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment. On the other hand, in the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be *so significantly better* than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former. *In negative terms, evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual.*

*Id.* at 626–27 (citation omitted; emphasis added). *See also id.* at 627 ("[W]hen qualifications evidence is all (or nearly all) that a plaintiff proffers to show pretext, the evidence must be of sufficient significance itself to call into question the honesty of the employer's explanation.").

In other words, a plaintiff may demonstrate pretext based on qualifications evidence using one of two methods: (1) by showing that she was so significantly more qualified than the other candidate that no reasonable employer would have chosen the other candidate (in which case other

evidence of discrimination is not required); or (2) by showing that she was as qualified or slightly more qualified than the other candidate (in which case other evidence of discrimination is required).

Here, plaintiff Susan Philbrick argues that her "qualifications superiority was significant enough to alone" demonstrate pretext. In addition, she contends that the record contains sufficient "other evidence" demonstrating illegal discrimination. The majority appears to accept both arguments, holding that plaintiff prevails under the "so significantly better" standard and also under the "other evidence" approach. I respectfully disagree.

First, the evidence does not show that Philbrick's qualifications were "so significantly better than [Robinson's] qualifications that no reasonable employer would have chosen" her over Robinson. *Bender*, 455 F.3d at 627. Curiously, the majority concedes that Robinson had a "broader overall range of experience" than Philbrick, yet simultaneously holds that plaintiff was the "plainly superior candidate." I agree with the majority that Robinson had a broader range of experience than plaintiff—it is precisely for this reason that I disagree with the majority's conclusion. Philbrick's and Robinson's relative employment histories demonstrate that each had significant experience. For example, although Robinson had worked for the Marshals Service for eight fewer years than plaintiff, Robinson had nonetheless worked for the Marshals Service for twelve years—hardly an insignificant amount of time. Although the majority accepts that plaintiff had significantly more supervisory experience than Robinson, this is not altogether clear, as career board member Fernando Karl testified that Robinson's and plaintiff's "overall managerial experience . . . was fairly equal."

Moreover, even assuming that Philbrick had more supervisory experience than Robinson and, having worked there for some time, had more ties to the particular district, Robinson had a wider breadth of experiences. For example, Robinson had worked as a supervisor in a sub-office, whereas plaintiff had not. Robinson worked with the Deputy Attorney General, whereas plaintiff did not. Robinson had experience working at headquarters; plaintiff did not. He had assisted in the recovery efforts following the September 11, 2001, terrorist attacks; plaintiff did not. Also, Robinson was fluent in Spanish, whereas plaintiff's resume listed no special language skills. Robinson had experience working as a contract officer technical representative (COTR), managing a $2.8 million contract, whereas plaintiff had no COTR experience and did not indicate on her resume that she had managed any large budget amount. Furthermore, Robinson had a top secret clearance; plaintiff did not. Finally, Robinson had worked in five different offices: Fort Lauderdale, Miami, Arlington, Washington, and New York City. By contrast, Philbrick had worked only in Michigan.

Importantly, Philbrick concedes that Robinson's interview scores were "significantly higher" than hers. Indeed, Robinson had five "strong" interview ratings and three "average," whereas plaintiff had three "weak" interview ratings and five "average." Regarding this consideration, Robinson was clearly the superior candidate. As every employer knows, personal one-on-one interviews are a crucial part of the hiring process. While the scoring of an interview is largely subjective, the significance of the human interaction between a supervisor and prospective employee should not be discounted. Effective and productive interpersonal relationships are important in many positions, including the Marshals Service.

Finally, although the majority makes much of the fact that Philbrick's composite merit promotion scores were higher than Robinson's, this fact is immaterial because no one with decisionmaker authority was aware of those scores.

Based on this record, I conclude that Philbrick's qualifications were not "so significantly better" than Robinson's that it would have been unreasonable for the Marshals Service to select Robinson over her. This is not to say that plaintiff was unqualified. Indeed, a reasonable employer could easily have concluded that Philbrick was the better candidate for the position. However, absent illegal discrimination, this is the employer's prerogative. As we held in *Bender*, "[i]f two reasonable decisionmakers could consider the candidates' qualifications and arrive at opposite conclusions as to who is more qualified, then clearly one candidate's qualifications are not significantly better than the other's." *Bender*, 455 F.3d at 628.

Because I agree with the district court's ruling that Philbrick was only "as qualified or marginally more qualified" than Robinson, the next inquiry is whether the record contains the additional requirement of "other probative evidence of discrimination." *Id.* at 626, 627. Philbrick and the majority rely on several facts as "other probative evidence of discrimination," including: (1) that the Marshal's recommendation is "usually" followed by the career board and the director; (2) that Presenter Fagan admitted to overlooking plaintiff's supervisory experience; and (3) characterizing Marshal Grubbs' assessment of plaintiff's credentials as flawed. But, this is not evidence of illegal discrimination. Rather, this evidence relates to Philbrick's qualifications or the hiring process. This *is* qualifications evidence, repurposed by plaintiff as evidence of discrimination. In other words, plaintiff attempts to use qualifications evidence in two ways:

both as evidence of her qualifications, and as evidence of discrimination. Our case law requires more.

Specifically, we require "*other*" evidence of discrimination, beyond evidence merely probative of plaintiff's qualifications or the process of hiring. For example, in *Risch v. Royal Oak Police Department*, 581 F.3d 383, 392–93 (6th Cir. 2009), this court found pretext where the female plaintiff was roughly as qualified as the ultimately-promoted male candidate *and* where the plaintiff's coworkers made statements related to her gender. Similarly, in *Bartlett v. Gates*, 421 F. App'x 485, 491–92 (6th Cir. 2010), the plaintiff presented evidence that he was as qualified as the selected candidate, and that his superiors had made discriminatory remarks. In *Bartlett*, we concluded that the discriminatory remarks, when combined with the plaintiff's qualifications evidence, were enough to survive summary judgment. *Id.* In contrast, Philbrick cites no authority in which this court has repackaged qualifications evidence and deemed it sufficient as "other probative evidence of discrimination."

In my view, this record is devoid of "other evidence of discrimination" similar to those found in other cases. In this regard, plaintiff points to no discriminatory remarks from her supervisors or coworkers regarding her sex. Nor is there any other additional evidence of discrimination from which a factfinder could infer that Robinson was selected because of an impermissible bias against plaintiff based on her sex. The inference of sex discrimination that Philbrick claims lacks any evidentiary support and, in my view, is based solely on speculation and conjecture.

In conclusion, on this record, there is insufficient direct or circumstantial evidence from which a reasonable jury could conclude that the presenter, career board, or director intentionally

discriminated against Susan Philbrick because of her sex. As the Supreme Court has held, the "ultimate question" in employment discrimination cases is whether the plaintiff was the "victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 153 (2000). Plaintiff failed to present sufficient evidence to answer that question in the affirmative. In this case, which the majority concedes is a "close call," my colleagues have assumed the role of a super personnel committee by second-guessing a legitimate personnel decision of the Marshals Service. For these reasons, I respectfully dissent regarding plaintiff's sex discrimination claim.

II.

I also dissent from the majority's conclusion regarding plaintiff's 2011 Title VII retaliation claim.

> The elements of a retaliation claim are similar but distinct from those of a discrimination claim. To establish a *prima facie* case of retaliation under Title VII, Plaintiff must demonstrate that: (1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.

*Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quotation marks omitted). "Title VII retaliation claims 'must be proved according to traditional principles of but-for causation,' which 'requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Id.* at 731 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2014)).

I agree with the majority that the dispositive issue is causation. The parties and the majority make much of the "temporal proximity" aspect of causation, discussing whether the five weeks—or six months, depending on where the line is drawn—between the EEOC action and the

hiring decision was sufficient to establish causation. In my judgment, this line of reasoning is immaterial because plaintiff cannot establish causation.

To prove causation, plaintiff must demonstrate that but for her EEOC complaint, she would have been promoted instead of the ultimately successful candidate. Assuming arguendo plaintiff's position that the career board and director would have rubber-stamped whichever candidate Marshal Grubbs ranked first among applicants, Philbrick must still show that she should have been ranked first but for her EEOC complaint. She does not do so. Plaintiff makes much of the fact that she was initially ranked third behind the less-qualified Candidate 85 and that Grubbs subsequently revised his rankings, placing plaintiff second. But it does not follow from the fact that Grubbs revised his rankings making plaintiff second that he would have ranked her first but for her EEOC complaint. Accordingly, the fact that Grubbs revised his rankings does nothing to answer whether plaintiff would have been promoted but for her EEOC complaint. Indeed, plaintiff was *never* ranked first. Nor does plaintiff argue that she *should* have been ranked first—although she argues that she was "overwhelmingly superior[]" to Candidate 85, she never appears to dispute that Jankowski was a qualified candidate for the job.[1] Instead, she requests that we do her work for her, suggesting that Grubbs' revision in rankings was indicative of some wrongdoing in a vague sense, leaving it to us to fill in the blanks with a finding of illegal discrimination. But it is plaintiff's burden to establish that her protected activity was the but-for cause of the adverse employment action against her, and absent evidence or a reasonable inference

[1]For example, plaintiff argues that "[t]he question not addressed by the District Court which the jury was prevented from answering, is why would Grubbs . . . rank Candidate 85 . . . above [plaintiff ?]" This illustrates perfectly plaintiff's and the majority's specious reasoning. Where plaintiff ranked relative to Candidate 85 is immaterial. What matters for purposes of establishing but-for causation is where plaintiff ranked relative to Jankowski, the top-ranked candidate.

that she would have been ranked first except for her EEOC complaint, I cannot conclude that plaintiff has met that burden.

III.

For these reasons, I respectfully concur in part and dissent in part. I would affirm the judgment of the district court.